## BLANKS et al. v. FIRST NAT. BANK OF SEYMOUR et al.

### No. 913.

Court of Civil Appeals of Texas. Eastland.

Nov. 20, 1931.

Rehearing Denied Dec. 18, 1931.

J. A. Wheat, of Seymour, and Taylor, Muse & Taylor, of Wichita Falls, for appellants.

Dickson & Dickson, of Seymour, and Carrigan, King & Surles, of Wichita Falls, for appellees.

HICKMAN, C. J.

Three suits in the lower court were consolidated by agreement of parties and tried as one cause, and the appeal is from a judgment in the consolidated cause. The plaintiffs below were respectively the First National Bank of Seymour, the Farmers' National Bank of Seymour, and Mrs. M. Bransford and James Bransford. The latter two were joint plaintiffs in the same cause, and each of the two banks filed a separate suit. All of the suits were upon promissory notes signed by A. J. Blanks, and the defendants in each case were A. J. Blanks and his son, J. A. Blanks, who were alleged to be partners, doing business under the name of A. J. Blanks & Son. Joann Blanks, infant daughter of J. A. Blanks, was made a party defendant for reasons hereinafter disclosed. In each case writs of attachment were sued out and levied on two tracts of land in Grayson county, and a tract of 365 acres in Baylor county. Prior to the institution of the several suits, the appellee, A. J. Blanks, conveyed the two tracts in Grayson county, one to his son, J. A. Blanks, and the other to his granddaughter, Joann Blanks. These conveyances were attacked by each of the plaintiffs as being made for the purpose of defrauding the creditors of A. J. Blanks. The consolidated cause was tried before the court and jury. In answer to special issues, the jury found that the conveyances were made in fraud of the rights of appellees, and such conveyances were set aside and held for naught. Upon a finding that no partnership relation existed between A. J. Blanks and J. A. Blanks, no money judgment was rendered against the latter. The judgment appealed from, in addition to setting aside the conveyances above mentioned, was a personal money judgment in favor of each of the appellees against appellant A. J. Blanks for principal, interest, and attorneys' fees on the several respective notes declared upon, together with a foreclosure of the respective attachment liens upon the two tracts of land in Grayson county, and the tract in Baylor county. Prior to the trial, appellant A. J. Blanks designated a particular 200-acre tract out of the Baylor county land as a homestead, and sought to defeat a foreclosure of the various attachment liens as to this particular tract on the ground that same constituted the homestead of himself and family. The court refused to submit this issue, but peremptorily instructed the jury that said tract was not exempt to said appellant under the Constitution and laws of this state. The jury returned its verdict on that issue as directed, and judgment was rendered accordingly.

No question is presented to this court as to the correctness of the judgment below in any particular except as to the homestead issue, and the only question presented for our decision is whether the trial court was justified, under the evidence, in withdrawing that issue from the jury. The only appellant who presents assignments is A. J. Blanks, and he will be referred to as appellant. Of course, it is elementary that, in determining this question, we must consider the evidence in the light most favorable to appellant. The facts with reference to this matter are:

A. J. Blanks and wife acquired this Bay-

lor county land about the year 1900, and lived thereon until the year 1905. They impressed 200 acres thereof with the homestead character by their use and occupancy during that period. In 1905, when their son Joe (J. A. Blanks) was eight years old, they purchased a house and some lots in the town of Seymour and moved thereto. Proper school facilities were not available near their farm, and their intention in moving to Seymour was to send Joe to school. After moving to town, Blanks engaged in the dray business from 1905 to 1920. Joe went to school for about ten years, and then assisted his father in the dray business. During 1920 Blanks sold the house and lots which he owned in Seymour and also sold his dray business. At about the same time a house and some more lots in another portion of the town of Seymour were acquired; deed to three of the vacant lots being taken in Blanks' name, and deed to the other three lots, upon which a house was situated, being taken in the son's name. Blanks, with his wife and son, moved into the house acquired by the son, and Blanks and wife continued to live in this house down to the day of the trial. The son lived with his father and mother as a single man until his marriage in 1925, when he acquired another home and moved thereto. After the dray business was sold out in 1920, Blanks engaged in the ice business for two years. His son was associated with him in some manner in this business. After disposing of the ice business, Blanks engaged in the grain and feed business up until a few months before the trial, when financial troubles brought about its closing. The son was also associated with his father in this business, but the jury found that their relationship was not that of partners. The various items of indebtedness made the bases of this consolidated suit were incurred over a period of several years while engaged in the grain and feed business. These items of indebtedness started in small amounts, and grew through the years with frequent renewals. A short time before the institution of the suits, Blanks made application to the John Hancock Mutual Life Insurance Company for a loan upon the 365-acre tract of land, in which he declared that said land was not his homestead, and that his homestead was "Lots 3 to 6, Block 19, Morris Addition to the town of Seymour, Baylor County, Texas."

Various financial statements were introduced in evidence alleged to have been made by Blanks to R. G. Dun & Co. and to the appellee banks for the purpose of obtaining credit. These statements will be noticed more particularly hereinafter.

There is considerable testimony in the record concerning acts performed and improvements made on the farm during the years by Blanks in the nature of building fences and windmills and reconstructing the house, and there is evidence of declarations made by him to his tenants and others that he was making these improvements to get the farm in readiness for him and his wife to occupy when they returned to it. He frequently spoke of this farm as his home.

■ These facts make a strong case in favor of abandonment. Had the jury found against appellant's claim of homestead, there would be no question of the sufficiency of the evidence to support such finding. But that is not the question presented to us for decision. We must determine whether these facts conclusively establish abandonment as a matter of law, leaving no issue of fact for determination. As is well said by Mr. Nunn in his new book on the Texas Homestead:

"There is no matter connected with the homestead that is more difficult of a proper solution than that of the question of abandonment. * * *

"The rule, early announced and now unanimously accepted is: (a) that there must be an intent on the part of the head of the family to permanently abandon and cease to use the property for homestead purposes; (b) and that such intent must be actually executed, and the property abandoned for homestead purposes, in accordance therewith. The intent here contemplated is a present, definite and permanent intent to cease to use the property for homestead purposes, as distinguished from an indefinite, uncertain or conditional intent to so abandon the use of the property for such purpose." Nunn on Exemptions, § 4, pp. 159, 160.

In support of the text, such leading cases as Shepherd v. Cassiday, 20 Tex. 24, 70 Am. Dec. 372, and Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177, are cited.

The only question presented in the record before us is whether there was conclusively established the definite and permanent intent contemplated by law. If that existed, then abandonment is established, for there is no issue of fact as to whether same was actually executed. The family had not resided upon this property for more than twenty-five years prior to the levying of the writs of attachment.

Of the many cases dealing with facts more or less like those here under consideration, we shall mention but two, as they are deemed to present all the essential elements existing in the record before us. In Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164, 165 (writ of error denied), the facts were: Farmer, a married man, acquired a tract of land in 1869 and resided there, using it for the purposes of a home, until 1879. In the latter year, in order to more conveniently locate himself to practice his profession (medicine), he bought a lot in the village of Birdville, erected a house thereon, and moved into it.

He continued to reside in Birdville until the year 1892, at which time he sold his Birdville property and rented a house in North Fort Worth, to which he moved with his family, and continued the practice of medicine, intending, as he declared, ultimately to return to his own home place. While living in North Fort Worth during the years of 1893 and 1894, he expressed the intention of moving back to his farm, speaking of it as his home. During the year 1894, Hale recovered a judgment against Farmer, and caused same to be abstracted. Later, an execution was issued on the judgment and levied on the farm, and the same was advertised for sale by the sheriff. Farmer sought to enjoin the sale, but injunction was denied. In the face of a finding by the trial court that the facts supported the conclusion that the farm had ceased to be the homestead of Farmer, the Fort Worth Court of Civil Appeals reversed and rendered the judgment below, perpetually restraining and enjoining the sale of said premises. From the opinion in that case we quote, as follows: "The evidence, to our minds, establishes that it was not his intention to abandon his homestead rights in the property in controversy, but that he always intended to move back to it at some time in the future, if he should not be successful in the practice of medicine."

This holding well illustrates the character of intention which must exist with reference to its definiteness and permanency. This case was cited with apparent approval by our Supreme Court in the recent case of Cocke v. Conquest, 35 S.W.(2d) 673.

The facts in the case of First National Bank of Paris v. Wallace (Tex. Civ. App.) 13 S.W.(2d) 176, 183, are, in all essentials, the same as those here under consideration. The farm claimed by Wallace in that case as his homestead was occupied by him and his wife for three or four years, beginning in 1901. In 1904 or 1905, Wallace moved to the town of Blossom, and engaged in carrying the mail. In 1908 he moved back to his farm, where he lived until 1910, when he and his family moved to the incorporated town of Deport. For two years after moving to Deport Wallace engaged in farming. In 1912 he established these three businesses: Tombstone business, a racket store, and cotton and seed buying business. He bought a lot in Deport, and built a house thereon, where he resided until 1919, when he sold his house and moved to Paris, Tex. At the time he sold his Deport home he bought a home in Paris. From 1919 to 1926 he continued to live in Paris in his own home, and engaged in the cotton business. While he was still living in Paris, he executed a mortgage on his farm, the foreclosure of which was sought in the suit. In February, 1927, he made an application for a loan on his farm to Bankers' Life Company, in which he made a positive representation that the farm was not his homestead; that

he had no intention to make it his homestead; that his homestead was in the city of Paris, and had been occupied by him as a homestead for six years; and that, taking into consideration his occupation, the property in Paris claimed by him as a homestead was amply sufficient in every particular for the purposes of his homestead. The Texarkana Court of Civil Appeals, after carefully reviewing the facts and authorities, held that the farm was not exempt to Wallace as his homestead. In making that holding, the court, in its opinion, used the following language: "A person who pursued strictly an urban business for a number of years in Deport, and then sold his home there, and at once acquired another home in Paris, where he continued to live with his family as late as the year 1926, and who continued to pursue a strictly urban occupation, may not reasonably claim that all during that time he had a homestead in the country, based primarily upon his occupancy, not later than the year 1910, of a portion of said premises, as a tenant at will."

The trial court in that case, as in the instant case, held that there was no disputed fact for the jury to decide with reference to the homestead question, and this conclusion was upheld by the Court of Civil Appeals. A writ of error was granted by the Supreme Court, and in the case of Wallace v. First National Bank of Paris, 35 S.W.(2d) 1036, the judgments of both the trial court and the Court of Civil Appeals were reversed and remanded to the trial court, with instructions to submit this issue of fact for the jury's determination.

As an original proposition, we might have arrived at the same conclusion as that announced by the Texarkana Court in that case, but the judgment of the Supreme Court in reversing the decision in this particular is binding upon us, and is conclusive on the question here under consideration.

The two appellee banks in this case pleaded below, and here insist upon, an estoppel against appellant to claim this property as exempt. The estoppel is based upon the claim that they were induced to deal with appellant because of certain financial statements made by him, in which he declared that the property in question was not his homestead, but that his homestead was in the town of Seymour. It is well settled that, where the physical facts would support a homestead claim on either of two different pieces of property, according to the real intention of the head of the family, and such head of the family makes a declaration of that intention, causing another to act thereon, he will be later estopped to declare a contrary intention. Carstens v. Landrum (Tex. Com. App.) 17 S.W.(2d) 803; Purdy v. Grove (Tex. Civ. App.) 35 S.W.(2d) 1078.

But the facts in this record do not bring appellees within this rule. It may be that

they would support a finding of estoppel, but they do not establish an estoppel as a matter of law. There were certain financial statements offered in evidence, some to R. G. Dun & Co., and some to the banks, some signed, and others unsigned. In no one of these statements is there a declaration by appellant regarding his homestead, which is conclusively shown to have been made by him, and which induced appellees to change their position to their hurt. There is no estoppel conclusively established. This is said, assuming, without deciding, that the rule announced in the two cases above cited would apply in a case where no lien was executed on the property claimed to be exempt, but merely personal credit extended on the faith of such representation.

We feel impelled, under the authorities, to remand this cause for a new trial on the homestead issue, but see no reason for a retrial of the other issues. It is therefore our order that the judgment of the court below, in so far as same decreed a foreclosure of the respective attachment liens upon the Baylor county farm, be reversed and the cause remanded, and that in all other respects it be affirmed.

Affirmed in part, and reversed and remanded in part.

#### On Rehearing.

■ In our original opinion, we did not set out in detail the various financial statements claimed to have been made by appellant and relied upon by the appellee banks to operate as an estoppel on the homestead issue. We disposed of that question in this language: "It may be that they would support a finding of estoppel, but they do not establish an estoppel as a matter of law. There were certain financial statements offered in evidence, some to R. G. Dun & Company, and some to the banks, some signed, and others unsigned. In no one of these statements is there a declaration by appellant regarding his homestead, which is conclusively shown to have been made by him, and which induced appellees to change their position to their hurt. There is no estoppel conclusively established."

In their motion for rehearing, appellees single out one particular financial statement alleged to have been made by appellant as forming the basis of the estoppel claimed. We shall therefore notice this one particularly. The statement was made to the First National Bank of Seymour, and was signed by A. J. Blanks. It was not dated, but counsel agreed in open court that the approximate date thereof was May 7, 1930. The notes sued upon in this case by that bank bear the following respective dates: November 2, 1929, November 7, 1929, November 21, 1929, December 3, 1929, and January 6, 1930. Clearly we could not hold that a financial statement made

May 7, 1930, induced the acceptance of notes made several months prior thereto. No other particular statement is discussed in the motion for rehearing, and we shall not, therefore, discuss each of them separately, but think it sufficient to state, as in our original opinion, that an estoppel, as a matter of law, cannot be predicated on any one or all of them.

The argument on the question of abandonment in the motion for rehearing is impressive, but we are unable to see any distinction between the facts of this case and those of the Wallace Case. It is insisted in the motion that the utmost period that Wallace was away was fifteen years, while in this case Blanks was away a quarter of a century. We know of no rule or decision fixing any definite period of time as the limit beyond which an abandonment will be declared as a matter of law, and think we would be wholly unauthorized to undertake to fix such a deadline. If Blanks had not abandoned his homestead fifteen years after he moved to town, he had not abandoned it ten years later. In fact, there probably would be more reason to hold, as a matter of law, that he had abandoned it in 1920 than in 1930, for up to 1920 he occupied a house owned by him in Seymour, and since that time has been occupying a house owned, according to the title papers, by his son.

The motion for rehearing will be overruled.