## WHARTON et ux. v. MORTGAGE BOND CO. OF NEW YORK.

### No. 12578.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 19, 1931.

Rehearing Denied Jan. 23, 1932.

W. E. Fitzgerald and O. E. Nelson, both of Wichita Falls, for appellants.

Walter Nelson, of Wichita Falls, for appellee.

CONNER, C. J.

The appellee mortgage company instituted this suit against appellant J. C. Wharton and wife, seeking to recover an indebtedness evidenced by a promissory note of $6,500, payable in installments of $375 annually, and to foreclose a deed of trust lien executed by appellant and wife to secure the payment of said note on lot 11, block 9, in Southland addition to the city of Wichita Falls.

Wharton was duly cited, but filed no answer. His wife, Mrs. Laura Wharton, however, intervened, joined pro forma by her husband, and alleged that lot 11, block 9, upon which the mortgage company sought to foreclose its lien, was at the time of the execution of the note and lien declared upon the homestead of herself and husband, J. C. Wharton, and had so continued to be at all times involved in the controversy.

A jury was impaneled, but, after the introduction of the testimony, the court refused appellants' request for a peremptory instruction in their favor and granted a like request of the appellee mortgage company. The jury returned a verdict in accordance with the peremptory instruction of the court, and the interveners, Mrs. Wharton and her husband, have duly prosecuted this appeal from the judgment entered in appellee's favor in accordance with the court's peremptory instruction.

The fact that both parties to this litigation requested the court to give peremptory charges in their favor does not relieve this court from its duty to consider and determine appellants' assignments of error, complaining of the action of the court in giving the peremptory instruction in favor of the appellee mortgage company. See Citizens' Natl. Bank of Brownwood v. Texas Compress Co. (Tex. Civ. App.) 294 S. W. 331; Miller-Vidor Lumber Co. v. Schreiber (Tex. Civ. App.) 298 S. W. 154; Hickman v. Hickman (Tex. Civ. App.) 20 S.W.(2d) 1073; Gattis v. Kirk (Tex. Civ. App.) 12 S.W.(2d) 589; Morriss v. Knepper (Tex. Civ. App.) 10 S.W.(2d) 1012.

It is contended in behalf of appellee that the evidence conclusively shows that the homestead of the interveners had been abandoned prior to the execution of the mortgage and trust lien, upon which the suit was founded, or, if not abandoned, that the intervening appellants are estopped to now set up their homestead rights, and our disposition of this appeal depends solely on whether or not either of such contentions can be supported by the statement of facts submitted to us for consideration. If so, the court committed no error in giving the peremptory instruction in appellee's favor. Otherwise, the judgment must be reversed under appellants' assignments of error questioning the court's peremptory instruction.

The rules by which we must be guided are quite familiar, that is, if there is any evidence of probative force in support of a material issue of one of the litigants, it is error for the court to refuse to submit it to a jury, regardless of evidence of a contradictory character.

The evidence is undisputed that lot 11, block 9, upon which the mortgage company seeks to foreclose its trust deed lien, was established and occupied by J. C. Wharton and wife as a home long prior to the proceedings out of which the present controversy grew. Their home was brick, costing, as Wharton testified, more than $20,000, into which Wharton and his wife moved in June, 1919, and have there lived continuously since, unless and except as hereinafter stated. In 1928 J. C. Wharton obtained from the appellee mortgage company a loan. A Mr. Blain was the negotiating agent of the appellee company. Mr. Wharton testified that: "I went to Mr. Blain and asked him about making a loan on the place, and he wanted to know if it was a homestead, and I told him that it was, and he said that he would make it but we would probably have to move out of the house and move the furniture, for he said we would have to vacate the house for a few days. So we rented the house out and moved to a room out in town. I am positive that when I went to him for the loan I told him the place was a homestead. He said we would have to vacate the house for a while and he said if we had some other land to designate that as a homestead."

This witness further testified that he owned 200 acres of unimproved land in Jim Wells county, upon which they had never lived.

It further appears that Wharton, in the accomplishment of his purpose, rented the homestead, reserving a room therein, and leaving therein all household and kitchen furniture, and Mrs. Wharton "went out and rented a bedroom in another part of Wichita Falls." This was on the day the application for the loan was filed. He testified: "As to whether Mr. Blain then knew all about the fact that all we did was to rent a bedroom and not move any of the household furniture —he knew that we were just moving out temporarily because that is what I told him. As to whether Mr. Blain and I both thought that would make it a valid lien, if I would just move out temporarily, well that is what he told me; we thought it would make it all right. I thought it would, and he said he thought it would."

Wharton further testified that he and his wife had "slept out at this room we had rented from the 22nd day of March to the 28th day of April, 1928—the same year—and then we went back to the residence and have been there ever since. * * * Between the 22nd day of March, and the time that the application for this loan was made, and the 2nd of April, the house was vacant, except the time that we were out there; we went back and forth every day; we just moved into one room at the time, and we were back and forth at the house every day, because at the time we rented the house we reserved one room. I told him that at the time I made the application for the loan. I had made the agreement to rent the house at the time that I made the application but the fellow did not move in until later. * * * You say if I knew and claimed it all of the time, why did I swear that I abandoned it as a homestead in March of 1928—well, we just vacated the house in order to get the loan through like Mr. Blain told us to do."

Mrs. Laura Wharton testified as to the renting of the room and of its occupancy and of the fact that their furniture was left in the house, and as to the time of their leaving and returning, substantially as Mr. Wharton, and further that: "The purpose was so that we could make the application for the loan. * * * I certainly do not mean to say that my husband and I conspired to defraud these people and practice a fraud on them and get their money. We went out on Beverly Drive so that we could get the money. I thought it was a good loan I was making—no, we had not vacated the homestead. We moved out of the house and stayed out of it during the time they were fixing it up so we could get the loan, and came back and forth though during that time. * * * As to the statement made in the deed of trust that the homestead was 200 acres in Jim Wells county, well, I don't remember it word for word, but I understood it was a deed of trust. I had the paper in my hand and read it over. * * * My husband told me that we could not get a loan on our homestead unless we moved out for a while. My husband and I, of course, talked about moving out and how long we would stay. My husband said we would have to move out for a short time. He did not say that if we abandoned the homestead we could get money on it. I never intended to abandon my home. * * *

"I don't think that I talked to Mr. Blain

myself until the time came to sign the papers. When I went out on Beverly Drive it was my intention to stay there for a short time, and come back to my home and make it my home. * * * I understood all right that we were making a deed of trust on the homestead. I did not have any desire or intention at any time to conceal anything from Mr. Blain. * * * At the time I went out to this room on Beverly Drive I most certainly did not have any intention of abandoning my homestead. We did not change any light meter or gas meter or anything like that, we just left everything."

Mrs. Emmeline Wright, a notary public in the office of Mr. Blain, agent of the mortgage company, testified that it was the custom, when an application for a loan was made, that Mr. Blain examine the property before he takes a formal written application; that a copy of the application is sent to the home office in New York to be passed on there, and if granted, the papers were then prepared in the Wichita Falls office; that it was not necessary for them to get the approval of the head office at New York on the papers "after we fixed them up. * * * If the property has ever been their homestead we take an affidavit."

Mr. Blain, who was the agent of the appellee mortgage company, testified that Mr. J. C. Wharton came to him and said he wanted to borrow some money on the 1810 Huff street property, and:

"I asked him if it was a homestead; he said he thought it was; in fact he said that it was and I told him that he would have to vacate this property and designate other property as his homestead, and I told him that he would have to vacate it, which was the same thing as abandoning it. * * * He said that he wanted to borrow money to go and improve this land. He said that he was going to abandon this as a homestead and would go on the land in Jim Wells county and improve it and live on it. I believed what he said. He did not tell me that he had any intention of returning to the Huff street property. He did not intimate to me that he even intended to return to this property to live. Did not in any way intimate to me that he ever intended to again occupy this property on Huff street as his homestead. * * * I went out and looked at the property prior to the time that he made the application, and again went out and looked at it, after the loan was approved, and before the loan was finally closed. * * * My connection with the company ceased the first of November, 1930. I represented the company up to that time. I got a commission on each loan that was made. * * * Mr. Wharton came to see about this loan several days before the application was made. He told me that this was a homestead and he wanted to borrow money on it. He told me that he was living there. He did not conceal the fact that it was a homestead. I told him if he lived there he could not get

a loan on it. I told him that he would have to abandon it as a homestead. As to whether I told him that it would be better for him to move his furniture and all of his stuff out for a while; no, sir, I told him that he would have to move out; I don't remember whether he said he did not want to, but I told him he would have to do it if he borrowed the money on the place. I don't recall whether he told me there were no improvements on the property in Jim Wells County at that time. I don't recall that he said that he thought that he could sell the property in Jim Wells county and pay the loan out of the proceeds of the sale of that place. I would not swear that he did not say that, but I certainly don't remember that he said it. I don't say he did not. I can only say that I don't remember it. It is not a fact that I told Mr. Wharton that he would have to vacate the property and would have to be out of the property for a short while during the time the application was pending. I thought that he could abandon the property and that would make a lien good on it. I thought that he could move out of the property and that a lien would be good. I did not know that he was going to move back. I thought if he was out of the property the lien would be good even though he moved back in it. That is common ordinary law. That is the law. * * *

"I went out there the day that the loan was closed and before the deed of trust was signed, and he was not apparently living there then, and in addition to that had him sign an affidavit that he had abandoned it. I did not pay out the money until I had investigated to see if he had moved and abandoned the house. I went there and the house was closed and all of the windows were down, and the shades drawn and I could not see in and could not get in and nobody answered the door bell. If any one was living there they did not come to the door. The house had the appearance of being vacant. I asked Mr. Wharton if he had moved out and he said that he had. That is all of the investigation that I made. I took it that he was a man of honor."

As indicated in the testimony from which we have quoted, a deed of trust was executed in favor of appellee company and duly executed and acknowledged by both Mr. and Mrs. Wharton. The trust deed was dated April 4, 1928; it was in a familiar form, and contained, among other things, the following recitation:

"And we the said grantors herein, hereby covenant with regard to the property herein conveyed as follows:

"That we have done no act to encumber said lands, and that there are no encumbrances thereon; that the herein described property is not our homestead, nor claimed, used or enjoyed by us as such, and that we have other property in Jim Wells County,

Alice, Texas, which we occupy and claim as our homestead."

J. C. Wharton, on the 22d day of March, 1929, also subscribed, verified, and duly executed what is termed an affidavit in which appears, among other things, the following recitation: "Is any part of the property your homestead? No. * * * Was it ever your homestead? Yes. If so, when did you abandon it as such? March, 1928. Do you intend to make it, or any part of it, your homestead? No. Give full legal description of your homestead—North 200 A of the west 500 A of the 1012.73 A of Ramon Moreno's Tract—Jim Wells County, Alice, Texas. How long have you occupied your homestead and is the title to same well vested in you? Yes."

The right of a husband to abandon the homestead, with or without the consent of his wife, if done in good faith, is well established. See Steves v. Smith, 49 Tex. Civ. App. 126, 107 S. W. 141, writ of error refused; Llewellyn v. First Natl. Bank (Tex. Civ. App.) 265 S. W. 222; Wootton v. Jones (Tex. Civ. App.) 286 S. W. 680, 687, and cases therein cited.

In Wootton v. Jones it is said:

"Where property is actually occupied as a home, the rule is that neither husband nor wife is estopped to assert its homestead character by designating as homestead other property not so used, coupled with the declaration that the designated, and not the occupied, property is in fact the homestead. The basis of the rule is that the physical facts charge the lender with notice of the homestead character of the occupied property.

"On the other hand, where property is not actually occupied as a home, the husband and wife may, by their declarations, estop themselves from asserting its homestead character. Llewellyn v. Bank (Tex. Civ. App.) 265 S. W. 222, and authorities there cited. The reason for this rule is that the homestead character of the property rests in the minds of the owners, and is not disclosed by physical facts which are open to observation; and, therefore, a representation made by them, not inconsistent with the physical facts, intended to be, and actually, relied upon by the lender in making the loan, brings the case clearly within the principles governing estoppel."

A temporary removal with the intent to return and continue the occupation of the premises as a home will not constitute an abandonment. It must appear that the removal was with a definite purpose and intent to never return. A reference to a few of the cases will make this clear. In the case of Armstrong v. Neville (Tex. Civ. App.) 117 S. W. 1010, it was held that, to constitute an abandonment of a homestead, it must affirmatively appear that there was not only a removal from the home, but a removal coupled with a fixed intention never to return. In Wiener v. Zweib (Tex. Civ. App.) 128 S. W. 699, it was held that, for removal from the homestead to be an abandonment, there must be an intent not to return, and, where the intent not to return has not been formed, the homestead character is not destroyed. In Building & Loan Association v. Guillemet, 15 Tex. Civ. App. 649, 40 S. W. 225, it was held that living on rented premises does not forfeit one's right to an established homestead, the use of which has been temporarily abandoned.

Nor will an established homestead right be lost by way of estoppel by mere recitations in a trust deed or other instrument of writing. See Watkins v. Markham (Tex. Civ. App.) 36 S. W. 145; Farmers' State Bank v. Farmer (Tex. Civ. App.) 157 S. W. 283. In the case first cited, it appears that the plaintiffs in an application for a loan alleged upon oath that the land offered as security was not their homestead or the homestead of any other person. It appeared, however, that the defendant's agent knew that plaintiffs had a homestead right in the property, and it was held that plaintiffs were not estopped from maintaining an action to set aside a deed of trust given to secure the loan made in accordance with the application on the ground that the property was their homestead.

A trial by a jury is secured by our Constitution, and the jury are made by the statutes the exclusive judges of the credibility of the witnesses, and we have concluded, after a careful consideration of the evidence as presented to us, that the testimony is not, as a matter of law, of that conclusive character which authorized the giving of the peremptory instruction, and that hence the court erred in taking the case from the jury. If in fact the homestead of appellants had been abandoned, as appellee mortgage company pleaded, they are in no position to claim the relief sought by them. Or, even though it should be found that the homestead had not been abandoned, yet if the appellee mortgage company and its agent, Blain, was without notice of that fact, and in good faith made the loan in controversy, believing that the homestead had been abandoned as recited in the trust deed and in the affidavit of J. C. Wharton, then also appellant's plea of homestead would be unavailing. As before stated, however, the fact that both parties requested a peremptory instruction in his favor does not deprive appellants of their right to a verdict by a jury on the material issues of abandonment and estoppel and of notice.

It may be suggested that the evidence tends to show that appellee's agent, Blain, acted in the premises with such knowledge and under such circumstances as to become

the agent of appellants instead of appellee. If so, appellee would not be affected by his knowledge, but such issue was not presented by the pleadings, and therefore is not now available. See Williams v. Daniel (Tex. Civ. App.) 30 S.W.(2d) 711.

We conclude that appellants' assignments of error complaining of the court's action in giving the peremptory instruction in appellee's favor should be sustained and the judgment reversed and the cause remanded for further proceedings not inconsistent with this opinion.