## FARMERS' STATE BANK OF GEORGE-TOWN et al. v. ROBERTS et ux.

### No. 7832.

Court of Civil Appeals of Texas. Austin.
April 26, 1933.

Rehearing Denied May 17, 1933.

Sam Burnap and Wilcox & Graves, all of Georgetown, for appellants.

W. C. Wofford, of Taylor, and Hal Browne and David Weintraub, both of San Antonio, for appellees.

BLAIR, Justice.

Suit by appellees, P. E. Roberts and his wife, against appellant Farmers' State Bank of Georgetown and the sheriff of Williamson county, to restrain the sale of certain land under writ of attachment to satisfy a judgment in favor of appellant bank against P. E. Roberts, and to remove as cloud on title the asserted attachment lien, because the land was the homestead of appellees on the date of the levy of the writ of attachment.

The sole issue submitted to the jury and the answer thereto are as follows:

"Had the plaintiff prior to the levying of the writ of attachment, to-wit, April 25th, 1929, abandoned as his homestead the land described in his petition?

"The word 'abandon' as used in this charge, means the leaving of a homestead with the fixed intention never to return to it for the purpose of using it as a home. Answer yes or no." Answer: "No."

Judgment was accordingly rendered for appellees as prayed; hence this appeal.

We do not sustain the contention of appellant bank that the evidence showed as a matter of law that P. E. Roberts had abandoned the land as his homestead prior to the levy of the writ of attachment. The issue of abandonment was clearly one for the jury, and the evidence supporting the jury's finding may be briefly stated as follows:

Roberts bought the 62½ acres of land in 1921, and he, his wife and daughter, moved on the land in 1925, making a crop on the place for that year. Mrs. Roberts lost her health, and they went "to San Antonio temporarily, thinking she might gain her health back." Roberts obtained employment and his employer furnished him a house to live in, but shortly thereafter Mrs. Roberts went to Carlsbad to the tuberculosis sanitorium, where she remained a short time. She notified her husband that she was returning to San Antonio. Roberts notified his employer of the expected return of his wife, and the employer told him that, since Mrs. Roberts had been in the tubercular sanitorium, he did not want her to live in the house he had been furnishing Roberts. Roberts told him he did not have time to rent a house, or that there were no rent houses; and his employer sold him a small house next door to where Roberts had been living, with no down payment, but to be paid for at $25 per month, like rent. This property was deeded to Roberts in February, 1927, and from this time Roberts and his wife and their married daughter and her husband lived in the house until September, 1928, when Roberts deeded the property to his daughter, since which time he has lived at another place; he being separated from his wife. Mrs. Roberts lived on the farm a little while in 1928, but returned to and is now living with her daughter in the San Antonio house. The writ was levied in April, 1929. When Roberts left his farm he left his tools, implements, and practically all his household furniture, not knowing how long he would be gone, but that due to the continued illness of Mrs. Roberts these were later sold. Since Roberts left the farm,

both he and his wife have been back, and both testified that they have at all times and still claim it as a homestead, and that it is all the land owned by them in Texas. Mrs. Roberts testified that she tried last year to make arrangements to farm the place herself, but was unable to do so, and that the only reason she was not living on the farm now is because she is not physically able to do so.

Appellant offered testimony of declarations of Roberts, to the effect that he claimed the San Antonio property as his home; that he offered to execute a deed of trust on the 62½ acres in suit to secure a loan; that, after he purchased the San Antonio property, he tried to sell the 62½ acres; and that he voted in San Antonio. It is the contention of appellant that this evidence brings this case within the rule announced in the case of First Nat. Bank v. Wallace (Tex. Civ. App.) 13 S.W.(2d) 176, 183, "That the best evidence of homestead abandonment is that a new and permanent home has been acquired"; and in which case the court instructed a verdict that the homestead had been abandoned. The Commission of Appeals, in an opinion adopted by the Supreme Court [Wallace v. First Nat. Bank, 120 Tex. 92, 35 S.W.(2d) 1036], reversed the judgment based upon the instructed verdict, and held that the issue of homestead abandonment was for the jury. The facts in that case are much stronger in favor of abandonment than are the facts in this case. See, also, the recent case of Blanks v. First Nat. Bank of Seymour (Tex. Civ. App.) 44 S.W.(2d) 393, where it was held under much stronger facts of abandonment than are the facts in this case, that the question of abandonment was for the jury.

■ Nor do we sustain the contention of appellant that the charge on abandonment was erroneous, "because the same did not inform the jury that, even though at the time the plaintiffs left and moved away from the land in controversy, they might have at that time had a fixed intention to return and occupy same as a homestead, still the intention not to return and occupy said land as a homestead could have been formed at any time after leaving the land in controversy, and before the levy of the attachment."

When the issue and the definition of abandonment above quoted are construed together, they simply asked the jury to find whether or not appellees, prior to the time the writ of attachment was levied, left their homestead with the intention never to return to it as a homestead. A similar definition was approved in the case of Cline v. Upton, 56 Tex. 319: "Abandonment is a question of fact to be determined like any other fact, and considering the beneficent purpose of the exemption, ought never to be found to exist unless the removal and accompanying facts clearly show that the party in removing never intended to return to the homestead and use it as a home. * * * The fact of removal, coupled with an intention never to return to the homestead, constitutes an abandonment, and nothing less does." See, also, Armstrong v. Neville (Tex. Civ. App.) 117 S. W. 1010; and Wharton v. Mtg. Bond Co. (Tex. Civ. App.) 48 S.W.(2d) 519.

The judgment of the trial court will be affirmed.

Affirmed.