WENTWORTH v. COLLINS et ux.

No. 13684.

Court of Civil Appeals of Texas. Fort Worth.

March 4, 1938.

Rehearing Denied April 1, 1938.

John C. Kay, of Wichita Falls, for appellant.

T. R. Boone and Kearby Peery, both of Wichita Falls, for appellees.

DUNKLIN, Chief Justice.

On December 28, 1927, Florence Collins and her husband, Boyd Collins, residing in Wichita Falls, Tex., borrowed from the Empire Mortgage Company, doing business in that city, the sum of $2,250, and, to secure the same, executed their deed of trust on 20 acres of land, situated in the country near the corporate limits of the city.

At the time the loan in controversy was made, and as a part of that transaction, Mrs. Florence Collins and her husband, Boyd Collins, made the following affidavit:

"The State of Texas
"County of Wichita

"Before me, the undersigned authority, on this day personally appeared B. Collins and Mrs. Florence Collins, husband and wife, known to me to be credible and trustworthy persons, who being by me duly sworn on their oaths say:

"That they are the owners of the East one-half of Block No. 12, Irrigated Subdivision of the J. A. Scott survey number 13, situated in Wichita County, Texas, and containing twenty acres of land, more or less. That the title to said property is in the name of Mrs. Florence Collins, and that same was purchased for speculation, and not as a homestead. That no part of said property has ever been used by affiants as their homestead, and that they have never resided on any part thereof, and that it is the intention of the affiants that they will never occupy said property as a homestead, and that they do not intend to ever reside thereon, and have made no preparations of any kind or character whatsoever looking toward their residing on said property, or using said property as their homestead.

"This affidavit is made for the purpose of obtaining a loan of money from the Empire Mortgage Company of Wichita Falls, Texas, secured by a lien upon said land.

"Mrs. Florence Collins
"Boyd Collins

"Sworn to and subscribed before me on this the 28th day of December, A.D. 1927, by B. Collins and Mrs. Florence Collins.

"Beatrice McKnight,
"Notary Public in and for Wichita County, Texas."

Her written application for the loan, made at the same time, embodied practically the same statements.

The deed of trust executed at the same time, to secure the payment of the note, named Wiley L. Robertson as trustee, to whom was given authority to sell the property for the purpose of satisfying said note at any time after default made thereon. That deed of trust was duly recorded in the deed records of Wichita county, in which the land was located.

The loan was made in Wichita Falls, Tex., by H. L. Hunter, acting as manager of the Empire Mortgage Company. The note and deed of trust in controversy, dated December 28, 1927, were held by Hunter for three days, and then sent to J. Q. A. Wentworth, residing in Salmon Falls, N. H., who accepted them without any investigation of the security offered, and with no written transfer therefor or indorsement of any character, relying solely on Hunter's approval of the loan, and his investigation of the title and value of the property given as security therefor. At the time, Hunter had on hand between $7,000 and $8,000, from collections he had made on Wentworth's account prior thereto; he having been intrusted by Wentworth to look after collections of all his loans.

J. Q. A. Wentworth died in Salmon Falls on January 30, 1929, and at that time he was owner of the note and the security therefor. After his death, his estate was divided equally between his surviving wife and his son, Ralph S. Wentworth, and in that division, Ralph S. Wentworth, also residing in Salmon Falls, became the owner of the note and deed of trust in controversy here.

On November 5, 1930, the Empire Mortgage Company, by a written transfer, assigned to Ralph S. Wentworth "all its right, title and interest" in and to the note in controversy, with the security given therefor, but the mortgage company did not then own the note or any interest in it, that transfer being made to show record title in the assignee. After Ralph S. Wentworth became the owner of the note, H. L. Hunter was intrusted by him to look after its collection, in the same manner as Hunter had done for J. Q. A. Wentworth, his father.

On January 9, 1933, Ralph S. Wentworth and Boyd Collins and Mrs. Florence Collins entered into an agreement in writing, in Wichita Falls, Tex., by the terms of which the maturity of the note and deed of trust

was extended to the 1st day of January, 1935. In that agreement, it was stipulated that "the conditions, covenants and agreements contained in said deed of trust are hereby ratified and continued in force, and this agreement shall bear the same relation thereto and be construed therewith in the same manner as the original bond hereby extended." The agreement further recited that the deed of trust lien had been sold to Ralph S. Wentworth, who was then the legal owner and holder thereof, and living in Salmon Falls, N. H. H. L. Hunter represented Ralph S. Wentworth in consummating that extension agreement, and, thereafter, Hunter looked after the collection of the interest on the loan, the same as he had done for J. Q. A. Wentworth before the death of the latter. No consideration was paid by Ralph S. Wentworth for the transfer of the note and deed of trust from the Empire Mortgage Company, he having acquired the same from his father's estate, the Empire Mortgage Company having no interest in it at the time, and the only consideration passing to Ralph S. Wentworth for the extension agreement, as recited in that instrument, was "the agreement of Florence Collins and Boyd Collins to pay said indebtedness, amounting to $2,250.00, on the 1st day of January, 1935, with interest thereon at the rate of six per cent per annum, payable semi-annually from January 1st, 1933, and to keep and perform all the covenants, terms and provisions contained in said deed of trust."

On June 8, 1936, the makers of the note having defaulted in its payment, Robertson, the trustee, at the request of Ralph S. Wentworth, advertised and sold the property to him, for a consideration of $3,108.62, and executed a deed thereto to said purchaser, all in accordance with the terms of the deed of trust.

Prior to said sale, and on, to wit, May 29, 1936, Boyd Collins and wife instituted this suit against the Empire Mortgage Company, in the usual form of trespass to try title, to recover the property covered by the mortgage. In the second count in the petition, it was alleged that plaintiffs had theretofore given and executed to W. L. Robertson, as trustee, a deed of trust on their property, which was plaintiffs' homestead at the time, and which was therefore void, with allegations of fact necessary to constitute such homestead. It was further alleged that the trustee had posted notices of a sale of the property under their deed of trust, which created a cloud upon plaintiffs' title, which plaintiffs sought to have removed.

On July 7, 1936, after Ralph S. Wentworth had purchased the property under sale by the trustee, he filed his plea of intervention in the suit, in which it was alleged that the Empire Mortgage Company had no interest in the suit, and had filed its disclaimer therein; further denying all and singular the allegations in plaintiffs' petition, with a plea of not guilty. There were further allegations of the execution by plaintiffs of the note and deed of trust above mentioned, default in the payment of the same, and the purchase by the intervener at the foreclosure sale made by the trustee. On the same day, the Empire Mortgage Company filed its disclaimer of any right or title in the property, with prayer for its discharge, with its costs. On the same day, the intervener filed his amended plea in intervention, repeating allegations in his original plea, with the further special plea of estoppel against the plaintiffs, based upon allegations that the loan was made by the Empire Mortgage Company, in reliance upon the affidavit of the plaintiffs, copied above, and that all the right the Empire Mortgage Company had to rely upon said affidavit inured to him, the intervener. Further, that if any part of the affidavit was not true, it was a fraud upon the rights of the mortgage company and of the intervener. Further alleging that the land in controversy was not the homestead of the plaintiffs at the time the loan was made, and they had no intention of making it such.

By supplemental petition and supplemental answers of the intervener, the facts involving the defense of estoppel were repeated. In plaintiffs' pleading it was alleged that, when plaintiff Mrs. Florence Collins approached Hunter, agent of the Empire Mortgage Company, for a loan, he inquired of her whether the property was their homestead, and in reply she informed him that it was their homestead, and the only property they had ever used as their home. That thereupon, Hunter informed her that no loan could be made upon the property if it was her homestead, but that he would endeavor to see what could be done about it. That some ten days or two weeks thereafter, she again saw Hunter, who had certain instruments already prepared, and told her that, if plaintiffs would execute those instruments, the Empire Mortgage

Company would make the · loan. That thereupon, plaintiffs, at the request of Hunter, did execute the instruments, but at no time understood the purported meaning of the affidavit pleaded by the plaintiffs. They believed that they could mortgage the homestead, and that Hunter well knew that the property was plaintiffs' homestead at that time. It was further alleged that the Empire Mortgage Company did not rely upon the truth of the affidavit made by plaintiffs, which was prepared under the direction of its agent and representative, H. L. Hunter, who knew at the time that it did not speak the truth. And, further, that notice of the homestead character of the property covered by the mortgage was brought home to the Empire Mortgage Company and J. Q. A. Wentworth and· Ralph S. Wentworth, through their duly authorized agent, H. L. Hunter, and none of those holders was an innocent purchaser of the note in controversy; and said deed of trust so executed and the sale made thereunder was void and of no further force and effect.

The defendant Empire Mortgage Company having filed its disclaimer, the case was tried with aid of a jury, between the plaintiffs and intervener, Ralph S. Wentworth, and the following were special issues submitted and findings of the jury thereon:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the land in question was the homestead of plaintiffs on December 28th, 1927? Answer: Yes.

"Special Issue No. 2. Do you find from a preponderance of the evidence that the Empire Mortgage Company knew on December 28th, 1927, that said land was the homestead of the plaintiffs, if it was? Answer: Yes.

"Special Issue No. 4. Do you find from a preponderance of the evidence that John Q. A. Wentworth intrusted the question of the validity of the mortgage lien to the Empire Mortgage Company at the time he purchased the Collins note, if he did so purchase same? Answer: Yes.

"Special Issue No. 5. Do you find from a preponderance of the evidence that the Empire Mortgage Company was the agent for John Q. A. Wentworth in the transaction pertaining to the purchase of the ·Collins note? Answer: Yes.

"Special Issue No. 6. Do you find from a preponderance of the evidence that the Empire Mortgage Company was the agent for John Q. A. Wentworth in passing upon the validity of the mortgage lien given by plaintiffs to the Empire Mortgage Company? Answer: Yes.

"Special Issue No. 7. Do you find from a preponderance of the evidence that said land in question has continuously been the homestead of plaintiffs, if it was, since December 28th, 1927? Answer: Yes."

Judgment was rendered in favor of the plaintiffs for title to the property in controversy, as against the Empire Mortgage Company and the defendant Ralph S. Wentworth, with the further decree that the property in controversy was the homestead of the plaintiffs on the 27th day of December, 1927, and has been so continuously up to the date of the trial; and canceling the trustee's deed in favor of the intervener, Ralph S. Wentworth, as a cloud upon plaintiffs' title.

Intervener, Wentworth, has prosecuted this appeal.

 It is well settled that one pleading an estoppel in pais has the burden of proving the facts which give rise to the estoppel and also that he will suffer loss, if the estoppel pleaded is denied. 17 Tex. Jur. § 16, pp. 146, 147; 14 Tex.Jur. par. 15, p. 144; Hill v. Engel, Tex.Civ.App., 89 S.W.2d 219, writ refused. Also that he has acted not upon his own information, but in reliance on the representations or conduct of his opponent. Waxahachie National Bank v. Bielharz, 94 Tex. 493, 62 S.W. 743; 14 Tex.Jur. § 14, p. 143.

 · We cannot say, as insisted by appellants, that the evidence was wholly insufficient to support the jury's findings that the property was plaintiffs' homestead when the note and deed of trust were executed. Upon that issue, Mrs. Collins testified · in part as follows: "During 1919 and 1920 I purchased a 20-acre tract from Kemp & Kell. I paid $8,200.00 for it. I bought it so I would have a homestead. I built a two-room house on it in 1920. I rented it out in the latter part of 1920. I moved back on it in 1921. I built another room on to the house in 1921. I had been living on the property off and on for sometime. I owed $3,000.00 on it and I would move off and run a boarding house and Mr. Collins would work in order to make the money to take

up the notes. When I would leave I would always reserve part of the fruit. When I rented the place I always reserved a portion of it. I never would let all the fruit go with it. I never did move all my furniture away from the place. I knew I'd be coming back and I did not want to leave it. I knew I would come back. I left beds, dressers, bedclothing and wash bowls, just different pieces of household goods, table. From 1920 to 1927 I was on and off the property four or five different times, sometimes two months and sometimes six or eight months at a time. At no time during 1927 did I ever rent all the land. From the time I acquired this property up to date I have never had any intention of not using it as a homestead."

Her testimony was corroborated in some substantial respects by that of several of her neighbors and tenants.

However, this is said in appellant's brief: "The Constitution [Article 16, § 50] prohibits liens on a homestead, except for the purchase money or improvements. We are not then concerned particularly in the instant case as to whether the land was a homestead. The real 'bone' of the matter is whether Collins and wife after their acts could be heard to say that it was their homestead."

Negotiations for the loan were initiated and conducted by plaintiff Mrs. Florence Collins. She testified that she went to see H. L. Hunter, representing the Empire Mortgage Company, and told him she wanted to borrow some money on the property in controversy, and further as follows:

"I told Mr. Hunter I wanted to borrow some money on my place and he says 'I can't loan it to you—that is your homestead,' and then I says: 'Well, it is my homestead, but I am now living in town.' He says: 'I will look into it.' He told me to come back. I came back four or five days later, at which time I made an application for $1,500.00.

"Q. With reference to the homestead matter whenever you told him before, what did he say about that? A. Well, he said he would fix some papers for me to sign. At that time I did not know that I could not mortgage a homestead. I had previously signed three sets of papers, one to Shamburger Lumber Company and two to Coyne Lumber Company. When I went back up there the second time I signed up an application. Mr. Hunter wrote out that application. I signed it. That was after I had talked about this, being my homestead, possibly a week after that. I never did tell him that I had abandoned that as my homestead. I never told anybody that. I bought it for a homestead. After I signed that application I told Mr. Collins I had made arrangements to get $1,500.00. He says 'Get more money'. I went back and asked for $2,250.00. Prior to that time I had taken an abstract to them for their examination. I did not employ any attorney to examine the abstract. I told him I owned no other real estate. As to how many different instruments I signed, I don't know—I signed everything they put before me. I did not read them. I have never intended to abandon that property as my homestead and did not intend to abandon it at that time I signed those instruments. I have never acquired another homestead since then. At the time I signed the papers I signed twenty notes, the Deed of Trust and some kind of affidavit. I was writing for about thirty minutes it seemed to me."

H. L. Hunter testified in substance as follows: Mrs. Collins came to his office to borrow $1,500 on the land. The matter was informally discussed. She then signed the written application for the loan. Witness went out and inspected the property. In a day or two Mrs. Collins returned and said she needed $2,250, and witness agreed to that increase of the loan. The question whether the property was homestead was discussed, but Mrs. Collins said she was not living on the land, did not intend to live on it, and had bought it with the idea she never would live on it as a homestead. She had bought it as an investment and was going to move to San Angelo with the money she was borrowing. Witness had Judge Aiken to examine the title and to prepare the affidavit which was signed by both plaintiffs. In making the loan, witness relied on the facts set forth in the application for the loan and affidavit, and would not have made the loan but for such belief.

It was the province of the jury to determine the controverted issue of facts arising from that testimony of Mrs. Collins and that of H. L. Hunter. And we cannot say that the action of the jury in accepting Mrs. Collins' version was wholly unwarranted, as insisted by appellants. Blanks v. First National Bank, Tex.Civ.App., 44 S.W. 2d 393, writ of error refused; McCrea v. Underwood, Tex.Civ.App., 73 S.W.2d 593; Kirksey v. Southern Traction Co., 110 Tex.

190, 217 S.W. 139; Diamond v. Duncan, 107 Tex. 256, 172 S.W. 1100, 177 S.W. 955.

According to the undisputed testimony of H. L. Hunter, corroborated by that of appellant, J. Q. A. Wentworth had for many years intrusted him with lending of the latter's money in Texas; and had authorized him to pass upon the sufficiency of values of the securities for such loans and of the titles thereto. During a period of many years Hunter had loaned approximately a million dollars of Wentworth's funds in Texas, had looked after collections of principals and accruing interest on the loans, kept account of the moneys so collected, and, when the loan was made to plaintiffs, he had on hand some six or eight thousand dollars belonging to Wentworth. As was his custom, three days after this loan was consummated, he mailed to Wentworth the note and deed of trust securing the same, without any transfer in writing thereof, which Wentworth accepted without any investigation of the security, relying solely upon the approval of the same by Hunter. Thereafter, Hunter collected and remitted to Wentworth all interest collected on the note prior to the death of the latter.

 That testimony shows conclusively that J. Q. A. Wentworth had appointed H. L. Hunter as his agent for the purpose of lending his money in Wichita Falls, Tex., with full authority to pass on the title of real estate taken as security for loans and the sufficiency of the value of the same for that purpose, and that he accepted the note and lien when sent to him by Hunter, in sole reliance upon Hunter's approval of the sufficiency of the security, without making any investigation thereof. Therefore, there was no necessity for the submission of that issue to the jury as a disputed issue. And even if it be said that the submission of the issues Nos. 4, 5, and 6, as to the agency of the Empire Mortgage Company to represent John Q. A. Wentworth in his purchase of the note was error, the error was harmless for that reason. And harmless for the further reason that, since John Q. A. Wentworth was not a holder in due course, he took the note subject to the same infirmities inherent in it while in the hands of the Empire Mortgage Company, the payee, who was not "a holder in due course." Williams v. Jones, 122 Tex. 61, 52 S.W.2d 256; Brinker v. First Nat. Bank, Tex.Com.App., 37 S.W.2d 136; Article 5935, section 58, Vernon's Ann.Tex. Civ.St.; 6 Tex.Jur. par. 8, p. 598, par. 195, p. 838. In this connection, it is to be noted further that, in appellant's pleadings, there was no charge of fraudulent collusion between H. L. Hunter or the Empire Mortgage Company with plaintiffs, to deceive J. Q. A. Wentworth, in taking over the loan.

Appellant stresses the decision of the Court of Appeals in Scripture v. Scottish-American Mortgage Co., 20 Tex.Civ.App. 153, 49 S.W. 644, writ denied, as controlling on this point. In that case it appeared that Simpson, as agent of the mortgage company, made a loan, secured by a mortgage on real estate. The validity of the loan was challenged by the borrower on allegations that the property was the homestead of the borrower when the loan was made. An instructed verdict against the homestead plea was affirmed on appeal. We believe that case is distinguishable from the present suit on the facts, pleadings, and procedure in the trial of this case. Furthermore, since that decision, many decisions appear in our published reports, in which the defense of estoppel against a plea of the homestead exemption was overcome in view of testimony offered showing notice to the lender of the homestead character, when the loan was made, notwithstanding the affidavit of the borrower that it was not such homestead. It is the province of the jury, and not of the trial court, to determine such conflict in the evidence. 22 Tex.Jur. par. 124, p. 179, and decisions there cited; Hill v. Engel, Tex.Civ.App., 89 S.W.2d 219, error refused, and decisions there cited; Blanks v. First Nat. Bank, Tex.Civ.App., 44 S. W.2d 393; McCrea v. Underwood, Tex. Civ.App., 73 S.W.2d 593.

 Appellant having acquired the note by inheritance from his father, and subject to the same defenses available while in the hands of his father, the formal written transfer of it to him by the Empire Mortgage Company, after he acquired it, did not make of him a holder in due course, because the company then owned no interest in it, which was well known to him, through his agent, H. L. Hunter, and he paid no consideration therefor; the transfer being merely for the purpose of a showing of record in the deed records. Vernon's Ann.Tex.Civ.St. art. 5935.

The evidence shows without controversy that the extension of the note by appel-

lant, noted above, was granted by him through his duly authorized agent, H. L. Hunter; it further shows that the extension did not operate to his injury, since, as found by the court and jury, the deed of trust in question was invalid, as against the father of appellant, by reason of the homestead exemption. Indeed, he profited by the extension, in the collection of interest after the extension. Further, there was no finding of the jury that appellant suffered loss in any manner by reason of granting the extension, nor did appellant request the submission of that issue.

Special Issue No. 3 was as follows:

"If you answer the preceding issue 'Yes', you need not answer the next issue; but if you answer the same 'No', then answer the following issue:

"Special Issue No. 3. Do you find from a preponderance of the evidence that a reasonably prudent person situated as the Empire Mortgage Company was situated on December 28th, 1927, would have known that the land was the homestead of the plaintiffs, if it was?"

There was no finding on that issue, since the preceding issue No. 2 had been answered "yes." And since appellant was not prejudiced by its submission, he is in no position to complain of it here.

There is no merit in the objection to the definition of the term homestead, given preliminary to the issues submitted, as being on the weight of the evidence. The definition was in the language of the Constitution. Article 16, § 51. It has been frequently held that failure of the court to define legal terms employed in issues submitted is reversible error. At all events appellant waived right to urge that objection here by failure to object to the issues submitting the issue of homestead.

Even though it could be said, as further insisted by appellant, that, in a suit in equity, such as the present, controverted fact issues are determinable solely by the court, and not by the jury, contrary to the Constitution, article 1, § 15, and statutes, Vernon's Ann.Civ.St. art. 2123 et seq., guaranteeing the right of trial by jury, the right to raise the point here was waived by failing to object to the submission of any of those issues to the jury in the trial court.

For the foregoing reasons, all assignments of error are overruled, and the judgment is affirmed.