## LLOYD v. SINGLETON. (No. 3225.)

Court of Civil Appeals of Texas. Amarillo. April 24, 1929.

Joiner & Cook, of Plainview, for appellant. B. P. Maddox, of Tahoka, for appellee.

HALL, C. J. The appellant Lloyd, a dentist, instituted this action against the appellee, another dentist, to recover the sum of $600 and interest alleged to be due as the purchase price of an X-ray machine which appellant sold to appellee in the month of April, 1926.

The appellee defended upon the grounds that the sale was on approval and was not to be a completed sale under the agreement until he and a physician, Dr. Turrentine, were satisfied that the machine could be used by them without danger to themselves and their patients. The answer is unusually long, but the substance of the allegations is that Fred Cole, acting for appellant, proposed to sell the machine to the appellee and Dr. Turrentine; that they advised him that they knew nothing about the mechanics of such a machine and were wholly inexperienced in operating it; that, if they decided to purchase it, it would be for the purpose of taking X-ray pictures of the human body and for treating diseases when such treatment was indicated; that they would not purchase it unless they could be convinced that it could be run and operated by them, or either of them, without danger to themselves or their patients; that they would not agree to purchase and would not obligate themselves to pay for it unless it was properly installed at the cost of appellant, and not then until they and each of them had operated it with safety and were convinced that they could operate it without danger to themselves or their pa-

tients; that it was to be accepted subject solely to the approval of each of them; that they would purchase it jointly, would be equally interested in it, and would not be bound to consummate the deal until they had, given the same a trial and satisfied themselves that they could operate it with safety to themselves and their patients; that they would not purchase it unless it was an up-to-date model and was properly installed, subject to their approval; that in order to induce them to purchase it, the salesman Cole made the following fraudulent representations and promises with reference thereto: (a) That it was practically a new machine, not over two or three years old, and was an up-to-date model; (b) that it was in perfect working order and would do the work for which defendant was purchasing it; (c) that plaintiff would thoroughly instruct them how to operate it with safety to themselves and their patients; (d) and would furnish them a complete instruction book showing how to run and operate it safely for the treatment of any disease for which it was indicated; (e) that plaintiff (who resided at Plainview) would, at his own expense, deliver the machine to the defendant in the latter's office at Tahoka and properly install the same so that it would operate satisfactorily and safely; (f) that, when so installed, defendant and Turrentine could operate it for the treatment of any disease which Turrentine might desire, with safety; (g) that neither defendant nor Turrentine would assume any obligation after the machine was installed until they and each of them had tried to operate it and were convinced that they could operate it safely in the taking of pictures and the treatment of diseases; (h) that the machine would be fully equipped with gauges and indicators, which would show how much electricity was being applied during its operation and in taking pictures, including violet rays or other rays of light generated by such machines in the taking of pictures and for the treatment of diseases.

It is alleged that neither defendant nor Turrentine knew the voltage of the machine nor the amount of electricity to be used in operating it, of which Cole had notice, and he represented to them that said machine would be equipped with such devices, gauges, or indicators, in order that they could tell accurately and correctly how much electricity was being used; that they informed said Cole that they were unskilled in the operation of such a machine and knew nothing of its mechanism and parts and would not purchase it or agree to pay therefor until they had given it a trial and had been instructed in its use and operation and had been furnished with the instruction book aforesaid, and also were satisfied that they could, with safety to themselves and patients, operate it; to all of which conditions said agent agreed.

It is alleged that the representations were made for the purpose of inducing defendant to purchase the machine and that they believed said representations were true and relied thereon and would not have agreed for said machine to be installed and would not have obligated themselves to pay therefor, but for such representations and promises; that said agent knew said representations were false and at the time they were made said agent did not intend to keep and perform said promises.

It is further alleged that, when the machine was first installed, it "shorted out" and threw sparks all over defendant's office; that they notified plaintiff, and he, through his agent, worked on the machine again and stated it was all right then; that defendant and Turrentine endeavored to operate it a second time with the same results, and defendant and Turrentine thereafter were afraid to try to operate it, because it could not be done safely; that the plaintiff nor any agent representing him ever instructed the defendant or Turrentine just how to operate the machine, especially in the treatment of diseases, and failed and refused to instruct them or to furnish them with an instruction book; plaintiff and his agents also failed to equip the machine with a gauge or any kind of an indicator which would show how much electricity or rays of light were being applied to the patient under treatment and have failed and refused to furnish such equipment; that the last time plaintiff's agent inspected the machine, he advised the defendant that the same was not properly installed, but that plaintiff had done all that he was going to do, and that defendant and Turrentine have never approved the machine nor agreed to purchase the same or to pay therefor; that the machine is not a new and up-to-date model and is more than two or three years old and out of date and obsolete and has never been properly installed so that it could be operated with safety.

By a supplemental petition, the appellant alleged that he entered into a contract of sale with Singleton and not with Turrentine; that plaintiff did not, through his agent, agree to teach the defendant how to treat diseases, but only to demonstrate how pictures could be successfully made with the machine; that, after the machine was installed in defendant's office, plaintiff's agent did operate it successfully; and that, if it failed to operate thereafter, it was solely because of the inability of defendant and Turrentine to understand and operate it. He alleges that he furnished books of instruction at the time the machine was delivered, being the books furnished by the original vendor of the machine; that said machine had been in use for a period of only six years; that, although the sale was made in April, 1926, defendant made no complaint as to the model or the faulty

installation of the machine, nor as to its failure to properly operate, until just prior to the institution of this suit; that he refused to answer any letters addressed to him by plaintiff inquiring why he had not paid for the machine and asking for any complaint or objections thereto. Plaintiff further alleged that, by reason of the sale to the defendant and the latter's failure to notify him that he would not accept the machine, plaintiff purchased another X-ray machine of a similar type to be used in an office too small for the instrument sold to defendant, and that said similar machine would not have been purchased if plaintiff had been notified that the defendant would not accept and pay for the machine which was sold him.

There was a trial to the court without the intervention of a jury, and a judgment that appellant take nothing.

The court filed no findings of fact and the case is before us upon three propositions which, for various reasons, insist that the judgment is not supported by the evidence.

No time limit was fixed by the contract within which appellee had to test and approve or reject the machine.

It is not claimed that appellee used the machine after the first two or three efforts, nor does it appear that he ever agreed to return it to appellant if it failed to operate safely and he decided not to purchase it. 52 A. L. R. 610.

The testimony is conflicting upon the material issues, but there is ample evidence to sustain the court's judgment upon either of several theories. Dr. Turrentine testified that he heard the agent Cole tell appellee that the machine would be properly installed and that he would give appellee instructions "to where he could use the machine" and would also furnish a special instruction book and would give appellee some lessons when the machine was installed. This was after Dr. Singleton told Cole that he was unskilled in the operation of the machine.

Turrentine further testified that the machine was sold subject to the appellee's approval, and, after it was installed, it was to be demonstrated and shown to be in perfect working order, and that appellee could pay for it almost any time he wanted to. The witness further stated he was in appellee's office several times when the latter was trying to use the machine and it shorted out and threw fire all over the room and even burnt the insulation off of the wiring and that these things occurred up to the time appellee quit trying to use it in taking pictures; that, when the machine was installed, it had a meter on it, but they finally discovered that the meter would not work; that Linn finally removed the ammeter and stated he would send it back to the factory; that it had evidently been injured in shipping and he could not use it without an ammeter, as it might kill him

or some one else; that the machine looked all right, but it does not work; would not register the amount of the electricity that went through it; that Linn did not set the gauge on the spark gap; that the gauge was broken, and he said it did not amount to anything; that it could be set with the little machine that went with it; that he and appellee both tried to use it after that and it shot out fire and would flash all over the room; that the control which widened and closed the spark gap was broken and was broken at the time of the trial; that it was broken in shipping; that Linn explained that it was broken at the time he was installing the machine; that, if the gauge which was intended to set the gap was not properly set, it would not produce a good picture, and, if used for treatment, it would very likely result in a burn.

The witness Anglin testified that he was in the electric business and in the employ of the utilities company as manager and was present in appellee's office when Linn installed the machine; that he was there another time and saw the appellee attempt to operate it; that there was a short circuit on two of the terminals and it burnt the wire in two on the transformer and set fire to the curtain; that Linn told appellee it was necessary, before it would be accurate in its work, that there must be some additional wiring, as the witness understood it, wiring from the transformer to the tubes and from the machine proper to the tubes, and that it was not safe unless such wiring was done; that, when it set the curtain afire, Linn stated that, with the spark gap in its broken condition, he would have to set it and for appellee not to change the space on it. It was after that that the other trouble occurred.

Dr. Singleton testified that, under the contract, plaintiff was to instruct appellee and Turrentine how to use it, and that plaintiff agreed to send instruction books with it, together with plans and specifications showing how to operate it for the purposes it was intended, and that no such instruction books were ever received or sent to him; that Linn drew off a schedule showing how many seconds to make an exposure and he set the machine and told appellee to leave it just like he had set it; that appellee tried afterwards, on several occasions, to use it, and that the spark would jump from the ammeter to some other meter or gauge on the other side, and that Linn returned after that and, when he left, stated it was all right, and the next time that appellee tried to use it was when the ball of fire which Anglin described flew all over the room; that Cole told him at the time he tried to sell the machine that it was not older than two or three years; that he bought it only on approval.

He further testified that every time Cole, the agent, came to his office, and he told him the condition of the machine, Cole always

promised to have it fixed up; that Cole stated he did not think it was installed properly and it was dangerous unless it was properly installed. He further testified that the machine would not take good pictures with safety to the operator or the patient; that he told Dr. Lloyd in June, 1927, he would not purchase the machine, that there was not any book of instructions with it, and that Dr. Lloyd replied he would send Linn to see about it; that he did not permit Linn to work on it when he came in October, and that he again told Lloyd in the latter part of September, 1927, that he would not accept the machine or pay for it; that he tried to use the machine up until May, 1927, and that, every time Cole came around on his monthly trips, they would talk about it, and Cole would promise to fix it up.

While, as stated, the testimony was conflicting with reference to these matters, the evidence briefly outlined above is sufficient to support the judgment, and the first two propositions are overruled.

By the third proposition, it is asserted that appellee is estopped to deny his liability by leading the appellant to believe that he had accepted the machine and would pay for it. Upon this issue the appellant alleged: "That by reason of the sale to defendant and his failure to notify this plaintiff that he would not accept said machine, plaintiff purchased another X-ray machine of a similar type, to be used in an office too small for the instrument sold to defendant, which said machine would not have been purchased had plaintiff been notified that the defendant would not accept and pay for the machine for which he is now being sued."

This does not allege sufficient facts to constitute an estoppel. No intendments are made in favor of a plea of estoppel, but it is incumbent on the pleader to aver all facts essential to its existence with particularity and precision. El Paso & S. W. Ry. Co. v. Eichel & Weikel (Tex. Civ. App.) 130 S. W. 922. Nor do the facts show an equitable estoppel. Cole testified: "I think I know the occasion for the sale of the machine. Dr. Lloyd was cutting up his office in two and making two operating rooms and that necessarily meant that he would have to have a smaller machine. It was too large." Linn testified: "This machine used by Dr. Singleton could not be used in the office where Dr. Lloyd moved to." Dr. Lloyd himself testified with reference to the machine: "It was larger than my business required and the new office I was moving into was not big enough for it. We were putting in two complete outfits."

It further appears from the record that, for the reasons shown by the above-quoted testimony, Dr. Lloyd had authorized Cole, who was a traveling salesman, to sell the large machine. It was not shown that Singleton made the proposal to either Cole or Lloyd to purchase the machine, but that it was offered to him by Cole, and, according to the implied finding of the court, he never did agree to purchase it, but merely accepted it on trial and approval. The appellant neither alleged nor testified that he would not have purchased the smaller machine unless appellee had agreed to take the larger one.

"Before an estoppel can be raised, there must be certainty to every intent and the facts alleged to constitute it are not to be taken by argument or inference. * * * If an act is susceptible to two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel." 21 C. J. 1139, § 139.

It is apparent from the record that, because Dr. Lloyd was moving into new offices, it became necessary for him to dispose of the larger machine, and, even if it be admitted that any promise or conduct on the part of appellee induced the sale, Lloyd's position has not been altered for the worse, because he could not use it in his new offices, and one material element of an estoppel is that the party claiming it must have been misled by the representations or conduct of the opposite party to change his position for the worse. 2 Pomeroy on Equity, § 804. The record is barren of any evidence which tends to show that Singleton, by words or conduct, induced Dr. Lloyd to purchase the smaller machine, or that he even knew that Dr. Lloyd intended to purchase one or move into a new office. No fraud is alleged in connection with the acts, constituting an estoppel, and the testimony does not support the contention that Dr. Lloyd relied upon Dr. Singleton's intention to purchase the larger machine and was thereby induced to purchase the smaller one.

Therefore estoppel is not in the case, and, since the judgment is supported by sufficient evidence, we think it should be affirmed, and it is accordingly ordered.