CONCORD OIL·CO., Petitioner,

v.

ALCO OIL AND GAS CORP., Respondent.

No. A–10041.

Supreme Court of Texas.

Feb. 24, 1965.

———◆———

Dodson, Duke & Branch, San Antonio, Black & Stayton, Austin, for petitioner.

Cox, Smith & Smith, San Antonio, for respondent.

ON MOTION FOR REHEARING.·

GRIFFIN, Justice.

The opinion heretofore rendered by this Court is withdrawn and the following substituted therefor:

Respondent, Alco, filed this suit in a district court of Bexar County, Texas, to recover from Concord the sum of $23,000.00 which Alco had paid Concord by virtue of a written contract between the parties.

Concord filed a cross action for damages because it alleged Alco had not carried out the terms of the contract, but had defaulted thereon. Concord contended as a defense to Alco's suit, that it had performed the contract, except in so far as Alco had extended the time of performance and pleaded that Alco was estopped to insist on the provisions of the contract because by its actions and conduct Alco had led Concord to believe that a strict compliance with the terms of the contract would not be insisted upon by Alco.

On a trial by jury and the answers the jury gave to the Court's charge, the trial court had entered a judgment that Alco take nothing by its suit, but awarded Concord $23,000.00 damages by virtue of Alco's breach of the contract.

Upon appeal the Court of Civil Appeals reversed the trial court's judgment and rendered judgment in favor of Alco against Concord for the $23,000.00 sued for. On Concord's cross-action a take-nothing judgment was entered. 375 S.W.2d 463.

Concord has appealed seeking to uphold its judgment in the trial court and to overturn the judgment of the Court of Civil Appeals.

We affirm the judgment of the Court of Civil Appeals.

The contract involved was in the form of a letter offer prepared by Concord and submitted to Alco and which was accepted by Alco.

The contract, generally speaking, was one whereby Concord farmed out to Alco an oil and gas lease which it had secured on a portion of the bed of the Colorado River, in Colorado County, Texas.

After setting out the consideration to be paid by Alco to Concord for an assignment of the lease, and providing for the reassignment of an undivided 1/4th interest in the lease when certain conditions had been met, the contract recognized that a well must be drilled on the leased premises, and that a drillsite must be obtained on lands adjoining the river.

Paragraph V is the one dealing with this drillsite and the obligations of the parties in this regard. It provides:

"It will be necessary to drill the well above described, or the substitute therefor, at the surface location adjoining the actual riverbed covered by the lease to be assigned to you [Alco]. We [Concord] are presently negotiating with the owner of said surface location for a lease thereof, together with the right of ingress and egress to and from same. In the event such negotiations do not promptly result in our securing such surface lease, we will promptly proceed to condemn such surface location in accordance with the law of the State of Texas providing therefor. You hereby authorize the bringing of said suit in our joint names if necessary to complete such condemnation. The securing of such surface location shall be at our sole cost and expense, and we agree and obligate ourselves to execute and deliver to you an assignment of such surface lease or condemned surface location, promptly after we have secured same. It is contemplated that the assignment of said surface location will be delivered to you prior to the date on which you are obligated to commence the drilling of the well above described but if, for any reason, we are delayed in securing said location beyond such time, the date for commencement of said first well shall be deferred for a period of thirty (30) days after tender to you of the assignment of said surface location. If we are unable to secure and assign to you such surface location by June 1, 1961, after a bona fide good faith

attempt on our part to do so, you shall be relieved from all further liability hereunder, and upon tender of reassignment of the above described lease, Concord firmly agrees and obligates itself to refund to you the cash consideration, theretofore paid by you to us under the terms of this agreement, and thereafter we shall both be relieved from further liability under the terms hereof."

In paragraph XI it is expressly provided "and it is understood that time is of the essence hereof." A reading of the contract as a whole demonstrates that it was the intention of Concord when it drew and tendered the contract to Alco and of Alco when it accepted this offer and completed the contract that time was of the essence.

■ The Court of Civil Appeals opinion has correctly and clearly analyzed this proposition that time was of the essence and we agree with and adopt its holding that the contract is not ambiguous and that time was made the essence of the contract. Baker v. Fell, 135 Tex. 375, 144 S.W.2d 255 (1940); 13 Tex.Jur.2d p. 524, § 287; 31 C.J.S. Estoppel p. 402, § 67; Corbin: On Contracts, Vol. 3A, p. 360, § 715; Williston: On Contracts, 3rd Ed. Jaeger, p. 181, § 846; Herbert v. Denman (Tex. Civ.App., 1931), 44 S.W.2d 441(4), writ refused. It is undisputed that Concord had not obtained the drillsite by June 1, 1961, the date set out in the contract.

Concord relies on facts, and circumstances, and conduct on the part of Alco's agents and officers to estop Alco from claiming and relying on the provision that time was of the essence of the contract.

Concord was unable to secure the drillsite voluntarily from the landowners and was forced to file condemnation suit therefor. This contingency was specifically covered by the terms of the contract.

Concord plead equitable estoppel in the trial court. Issues were submitted to the jury on this defense and the jury gave favorable answers to Concord on such issues. In the Court of Civil Appeals and here estoppel is relied upon as a defense to Alco's suit.

The letter from Concord was dated February 8, 1961, and accepted by Alco February 10, 1961. It was soon ascertained by Concord that it was not going to be able to get the drillsite by an agreement with the landowners, so condemnation proceedings were commenced at once. The landowners by three different restraining orders secured from the various Judges of Colorado County having jurisdiction, prevented the commissioners of condemnation from hearing any witnesses until May 31, 1961.

The third petition for condemnation was filed May 5, 1961, and the hearing set for May 16, 1961. May 12, 1961, a temporary restraining order was entered by the District Judge enjoining the May 16th hearing.

May 19, 1961, Concord's president, Pawel, telephoned the general counsel for Alco and told him of this restraining order and the delay in condemnation proceedings and told him that it would be his "guess that it would take about another 30 days to get the drillsite." And Mr. Moore (Alco's counsel) said that "We are having a meeting on Monday, May 22nd. * * *" And he said, "At that meeting we will discuss whether these delays are all right, and if they are not all right we will let you know." He never told Concord the result of this meeting. Concord's president testified "by not letting me know I came away with the firm impression that if I had gotten a drillsite any time until 30 days from May 19th, I guess June 18th that that was agreeable with Alco."

May 22, 1961, Concord dismissed its condemnation proceedings and filed its fourth petition in condemnation and hearing was set on this petition for May 31, 1961. In this petition it was alleged Concord and the landowners were unable to agree on the amount to be paid for the needed drillsite.

On May 30th those owning the land sought to be condemned for the drillsite, secured an injunction prohibiting the hearing on May 31st. This injunction was dissolved the morning of May 31st and the commissioners for condemnation heard one witness that date and postponed further hearing until June 5th.

May 29, 1961, Pawel again telephoned Alco's general counsel "and told him that the new setting was May 31st * * *; that we had now been restrained by the two Judges, who had slowed us down, we overcame their objections, there was one more district judge and we thought he would not stop us; and that we should have this drillsite within a few days after this May 31st hearing." When asked what Mr. Moore said in reply to this, Pawel testified: "Well, he said something like, 'that's fine' or something non-committal."

With reference to the May 19th and later conversations on June 1st with Moore, Pawel testified, "I think I had the general impression that he [Moore] did not have the authority to extend the contract."

Concord's president, Pawel, after dismissal of the restraining order on May 31st, put in a telephone call for Mr. Moore in Chicago. Moore was out of town. June 1st Pawel called Moore in Chicago and was informed Moore was in Denver. Pawel called the Denver office and left word for Moore to call him. Moore returned the call about 3:00 or 3:30 the afternoon of June 1st, and Pawel told Moore of the status of the condemnation.

Pawel testified, "I sort of gathered some hesitance on his part, and he said, 'Well, we will have a meeting on this and I will call you back.' " Moore did call back about 4:00 or 4:30 that afternoon and told Pawel something to the effect, "Our position has changed, and we have no quarrel with you but we would like to get out from under this deal." On Pawel's expressing shock and surprise, Moore said: "Well, I would like you to give us an option to stay in this deal and let us know after June 5th when you get the drillsite, and we will see then where we stand."

The above are the statements of Alco's agents and officers Concord relies on to establish their plea of estoppel.

While Pawel was talking to Moore the second time on June 1st a telegram was delivered to him from Alco's Denver office signed by its president, stating, in part, that "Alco hereby elects to tender reassignment to Concord Oil Company and be relieved from further liability under said agreement and lease." Alco formally demanded return of the $23,000.00 consideration it had paid and stated a letter was following. This letter was dated June 1st and was received by Concord June 2nd and it was to the same effect as the telegram.

Concord proceeded with the condemnation and June 5th the Commissioners made their award. June 6th Concord deposited in the County Clerk's office of Colorado County, Texas, double the amount of the award, and made the necessary bond required by statute in order to take possession of the drillsite.

Concord by proper instruments tendered the drillsite to Alco and insisted that it proceed to drill as the contract provided. Alco refused to accept the drillsite on the ground it was not procured by June 1st, sent to Concord a reassignment of all its rights under the original assignment to it from Concord and demanded again the return of the $23,000.00. Concord never returned the $23,000.00.

The facts in this record do not establish an estoppel.

After the May 19th and 29th conversations, Concord took no action other than they were required to take by virtue of their letter contract. This action was to proceed to condemn the land needed. Concord says that had Moore told Pawel that Alco was going to insist on the June 1st deadline, Concord would have gone out and paid the

landowners an amount necessary to secure the drillsite without condemnation.

■ "The burden of proving an estoppel, and the essential elements thereof, is on the party asserting it." 31 C.J.S. Estoppel § 160 a, p. 765.

"Estoppel is ordinarily regarded as affirmative matter; and under the rule that he who has the affirmative of the issue has the burden of proof, a party who claims, asserts, or invokes, or who alleges and relies on, an estoppel has the burden of establishing it, *or all of the facts or elements necessary to constitute it,* or the grounds on which it rests, and *the failure to prove any one or more of the elements* constituting an estoppel has been declared to be fatal. The opponent of the party relying on an estoppel is not required to show the absence of any of its component elements." Idem pp. 765–767. (Emphasis added).

See also 22 Tex.Jur.2d 692, Estoppel § 21; 19 Am.Jur. 852, Estoppel § 199; Wentworth v. Collins (Tex.Civ.App.1938), 115 S.W.2d 442, dismissed w. o. j.; United States Gypsum Co. v. Southern Pine Lumber Co. (Tex.Civ.App.1935), 84 S.W.2d 823, 824, n. w. h. An essential element of estoppel is that the party relying on an estoppel must have acted on it to his prejudice. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932(6, 7) (1952).

■ "No intendments are made in favor of a plea of estoppel, but it is incumbent on the pleader to aver all facts essential to its existence with particularity and precision." Lloyd v. Singleton (Tex.Civ.App.1929), 16 S.W.2d 891(4), n. w. h.; Gulbenkian v. Penn, supra.

■ "In order for an estoppel to exist, it devolves upon the party seeking the advantage thereof to establish that he has been misled to his injury. Fitch v. Lomax (Tex. Comm.App.) 16 S.W.(2d) 530, 66 A.L.R. 758; 17 Tex.Jur. § 15, p. 144." Free v. Smith (Tex.Civ.App.1935), 80 S.W.2d 419

(1, 2). Rev. on procedural point, 130 Tex. 23, 107 S.W.2d 588.

Concord's pleading of estoppel is set out in its application for writ of error, and consists of two pleas. First, it is pleaded that Alco and its agents remained silent with regard to whether or not Alco would be agreeable to extending the time for procuring the drillsite for thirty days after May 19th, "and permitted the defendant (Concord) to proceed thereafter with the expenditure of over $6,000.00 in drillsite acquisition costs. That all of the aforesaid conduct on the part of plaintiff (Alco) and its agents, and their said silence when they had a duty to speak, was calculated to, and did induce the defendant to continue in its very expensive efforts to acquire the drillsite and right-of-way." There were allegations of reliance by Concord on the conduct and silence of Alco and its agents in continuing the condemnation proceedings and expending large sums of money in its efforts to acquire the drillsite. The second part of the allegation was: "That had plaintiff and its agents not remained silent when it became obvious, as aforesaid, that the hearing in the condemnation proceedings would probably extend beyond June 1, 1961, and had they not been guilty of the other acts and conduct above described calculated to mislead this defendant as to plaintiff's intention with respect to the June 1, 1961 date, defendant could have concentrated on the acquisition of such drillsite, and could have secured the same prior to June 1, 1961, * * *, or in the alternative, defendant could have ceased its fantastically expensive efforts to secure said drillsite."

Concord relies on the cases of Schwarz v. National Bank of Texas, 67 Tex. 217, 2 S.W. 865 (1887); Weinstein v. National Bank of Jefferson, 69 Tex. 38, 6 S.W. 171 (1887); and Fifth National Bank of San Antonio v. Iron City National Bank of Llano, 92 Tex. 436, 49 S.W. 368 (1899), and similar cases following these authorities to sustain its plea of estoppel.

In each of these cases the facts show there was a change of position by the banks which resulted in injury to them should the plea of estoppel not be given effect. In Schwarz, the bank had credited Schwarz's indebtedness with the value of the lot transferred to it and Schwarz had failed in his business. In the Llano Bank case, the San Antonio Bank had surrendered collateral it had as security for Richardson's note, and had also paid out the Llano Bank's balance, relying on its statement of the balance as correct in the absence of objection from the Llano Bank. In addition, when suit was brought Richardson was a fugitive from justice. In Weinstein the bank had paid out funds it had on hand by virtue of the forged checks. As said in that case: "The object of the statement of the account in the pass-book, and its return with the checks, is to apprise the depositor of the full state of his account as shown by the books of the bank, to the end that he may verify it if it be correct, or detect its errors if it be found erroneous. * * * By his (Weinstein's) failure to speak in proper time, he virtually admits the correctness of the items charged."

Those cases do not apply here, for the record conclusively shows, as we herein set out, that Concord could not have purchased the drillsite from the landowners by June 1st. Until dissolution of the restraining order on May 31, 1961, the landowners were resisting the legal right of Concord to condemn the drillsite and they would not negotiate on the price to be paid.

Petitioner says that in all its many conversations with various representatives of Alco, no mention was made by Alco that it was going to insist on the June 1st deadline. Alco owed no duty to again tell Concord that June 1st was the deadline.

*Concord had prepared the contract* between the parties. This contract provided for the June 1st cut-off date and it further provided that time was of the essence of the contract. Both parties had copies of the contract and operated thereunder. Where

there is such a contract neither party has a duty to the other, every time contact is made with the other to say, "You know June 1st is the cut-off date." The parties have so contracted and are bound to such date in the absence of estoppel. This failure on the part of Alco to point out to Concord that June 1st was the cut-off date cannot be any basis for an estoppel.

More than once Pawel testified that he tried to negotiate with the landowners, and they would not negotiate or agree with him on payment for the drillsite.

As to the first part of the allegation, it is unquestioned that the telegram and letter of June 1st (letter received June 2nd) were plain and unqualified statements that Alco was insisting on the June 1st deadline. Concord could have no question about this. Up to that time Concord had done everything it considered necessary as required by the contract to secure the drillsite by June 1st. In fact, Concord had proceeded with all diligence, using every means available and in the utmost good faith to secure the drillsite by June 1st.

■ Having been notified on June 1st that Alco was electing "to be relieved of all further liability" under the contract, and was tendering a reassignment of all rights under the state lease and demanding return of its $23,000.00, Concord then proceeded with the condemnation proceedings, and expenditure of funds with full knowledge that Alco considered itself not further bound.

Concord contends that by Moore's statement, made in the second and last telephone conversation with Pawel June 1st, that "Well, I would like you to give us an option to stay in this deal, and let us know after June 5th when you get the drillsite, *and we will see where we stand,*" (emphasis added), Alco was estopped to put an end to the contract.

In view of the use of the words "option" and "we will see where we stand" Alco was not binding itself to anything past June 1st

except to take another look at the deal when the drillsite was procured and then determine if it wished to go into a contract with Concord. Alco did take another look when Concord notified it that the drillsite had been secured, and Alco did not desire to make another contract. The word "option" connotes the meaning there is nothing binding, but Alco would decide later if it wished to become bound or not.

As to the second allegation that Concord could have secured the drillsite prior to June 1st, Pawel testified that he could have and would have secured the drillsite, but for the acts and conduct of Alco misleading him. The record shows conclusively that he could not have secured the drillsite by June 1st.

The evidence shows that it was November 24, 1961, before Concord was able to secure any agreement out of the landowners to accept any sum of money for the drillsite or to take the condemnation award. In fact, Concord alleged in its trial petition filed in this case about November 15, 1962, that it "was unable to secure the drillsite mentioned in the aforesaid agreement between the parties by voluntary purchase from the owners of the land adjacent to the leased premises" and was required to institute condemnation proceedings to secure same. This was in accordance with Paragraph V of the contract, in the event Concord could not successfully secure the drillsite by negotiation with the landowners.

Prior to the hearing set for May 31, 1961, Concord had not refused or failed to take action toward securing the drillsite by June 1st as the contract required them to do. The record shows that the landowners up to and including May 30th would not set a price on their land. May 29, 1961, Pawel talked with Moore and advised that he should have the drillsite within a few days thereafter and Moore replied, "something like 'that's fine' or something non-committal." Neither in the conversation af May 19th or May 29th did Moore ever give an extension of time past June 1st for performance by Concord.

The elements of an equitable estoppel are not present in this record, and therefore the parties are bound by their contract. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929; Kelly v. Heimer, Tex.Civ.App., 312 S.W.2d 430; Terrell Hills Baptist Church v. Pawel, Tex.Civ.App., 286 S.W.2d 204; 22 Tex.Jur.2d, Estoppel, § 8.

Concord claims that Paragraph V of the contract required Alco to tender the reassignment of its rights under the lease as a condition precedent to terminating the contract.

■ Paragraph V does not so read. After setting out the necessity of securing a drillsite, and at the sole cost and expense of Concord, and other matters, the contract provides, "If we are unable to secure and assign to you such surface location by June 1, 1961, after a bona fide good faith attempt on our part to do so, you shall be relieved from all further liability hereunder." The only condition to relief to Alco from "all further liability" under the contract is that Concord, after good faith efforts, fails "to secure and assign to" Alco by June 1, 1961, the drillsite.

The contract then proceeds to set out that Concord is not to be relieved of its liability "under the terms hereof" until it has refunded to Alco the cash consideration heretofore paid by Alco to Concord. For Alco to be entitled to receive this cash consideration theretofore paid, it was necessary for Alco to tender reassignment of its rights under the lease. This Alco did and should recover the $23,000.00.

The petitioner's motion for rehearing is overruled and the judgment of the Court of Civil Appeals is in all things affirmed.

CALVERT, C. J., and STEAKLEY, J., dissenting.

NORVELL and POPE, JJ., not sitting.

CALVERT, Chief Justice.

I respectfully dissent.

Alco's right to recover the sum of $23,-000.00 paid to Concord depends, in final analysis, on whether there is evidence and jury findings in the record which will support a legal conclusion that Alco is estopped from asserting its contract right to have the money returned because of Concord's failure to procure the drillsite by June 1. The Court of Civil Appeals held that a legal conclusion of estoppel is not supportable because "there is no evidence of a false representation or concealment of material facts by Alco which was relied upon by Concord." 375 S.W.2d 467. The majority of this Court takes a different tack, and holds that the conclusion is insupportable because Concord was not injured by Alco's conduct inasmuch as "the record shows conclusively that he [Concord's president, Pawel] could not have secured the drillsite by June 1st."

Neither the Court of Civil Appeals nor the majority of this Court suggests that the jury's verdict is inadequate to support the conclusion, but an understanding of the verdict will serve to bring the holdings of both into better focus. In answer to special issues, the jury found that the officers and agents of Alco by their course of conduct led Concord's officers and agents reasonably to believe that Concord's failure to have the drillsite by June 1 would not cause Alco to attempt to terminate the agreement; that Concord's officers relied on the course of conduct of Alco's officers and agents to the extent that Concord's officers in good faith believed that Alco would not attempt to terminate the agreement on June 1 because of failure to secure the drillsite by that date; that but for its good faith belief, Concord could and would have secured the drillsite by June 1. Inasmuch as the judgment of the Court of Civil Appeals is bottomed upon a finding of "no evidence" to support essential elements of the jury's verdict, and the judgment of affirmance by this Court is based upon a finding of "con-clusive evidence" that an essential element of estoppel does not exist, the evidence on the controlling issues should be summarized.

The record reflects that during the months of March, April and May, 1961, Concord and Alco exchanged numerous letters and long-distance telephone calls. Most of these letters and calls dealt with technical details relative to drilling the proposed well such as obtaining a railroad crossing and using a more economical casing for the well. Once during April, Alco inquired of Concord's progress in obtaining the drillsite. However, there was nothing in any of these exchanges indicating that Alco was particularly concerned with Concord meeting its deadline, and nothing to indicate that Alco wanted to back out of the deal. It appeared that Alco was eager to begin drilling. It was in this context that the crucial telephone conversation of May 19 occurred. The conversation was between Pawel, president of Concord, and Moore, general counsel and assistant secretary of Alco. According to Pawel's version (which the jury obviously believed), he told Moore that it might take another thirty days to get the drillsite through condemnation; whereupon, Moore told Pawel that Alco's board of directors was having a meeting on the 22nd at which the contemplated delay would be discussed, and assured him that if the thirty-day delay in securing the drillsite through condemnation was not "all right" with Alco's directors, Pawel would be so advised. Moore testified that Alco's board of directors met on June 23 and 24, but did not make a decision on the matter. Moore did not notify Pawel.

Concord asserts that at the time of the May 19 conversation and following the board meeting there was ample time before the June 1 deadline to seek the drillsite through further negotiation with and purchase from the landowners, and that, as Pawel testified, it would have used the time for that purpose had it known Alco would insist on obtaining the site by that date, even if it meant "paying through the nose";

but that due to Alco's failure to advise promptly that the delay was not all right, Concord was led to believe that the delay was agreeable and that Alco would not insist upon its contract right to have the site by June 1. It is Concord's position that under these circumstances the law imposed a duty upon Alco to speak, and that because of Alco's silence, Concord lost its opportunity to use the time available before June 1 to obtain the drillsite by purchase.

Although the Court of Civil Appeals recognized in its opinion that silence under some circumstances may furnish a basis upon which to predicate an estoppel (see 375 S.W.2d 466), it held, nevertheless, that Concord could not sustain its plea of estoppel in the absence of evidence of a false representation or concealment by Alco on which Concord relied. What the court meant by the holding is not entirely clear. It could have meant that there is in the record no evidence of a false representation or concealment by Alco, or it could have meant that there is no evidence that Concord relied on a false representation or concealment which is supported by evidence. I do not share the conclusion in either event.

Silence, where there is a duty to speak, may be as misleading as a positive misrepresentation of existing facts. Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355, 361 (1947); Johnson v. Sovereign Camp, W.O.W., 125 Tex. 329, 83 S.W.2d 605 (1935); Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582, 587 (1912). "Silence, when there is a duty to speak, is deemed equivalent to concealment." 19 Am.Jur. 666, Estoppel, § 55.

Moore had been representing Alco in dealing with Pawel about the drillsite. He knew on May 24 that Alco's board of directors had failed to approve the contemplated thirty-day delay sought by Concord.

He knew, therefore, that the delay had not been agreed to and had not been approved as "all right" by Alco. He knew that, in keeping with his assurance, Pawel

expected to be advised if the delay was not approved by the board as "all right." He knew from Pawel's statement to him that Concord probably would not succeed in obtaining the drillsite by June 1 through condemnation proceedings. He knew that negotiation with and purchase from the landowners was an alternative means for securing the site. His knowledge was Alco's knowledge. Under these circumstances, good faith and fair dealing required that Moore speak for Alco, and his failure to speak was the equivalent of concealment of a material fact. Pawel's testimony supports the jury's finding that he relied on the concealment and was misled into believing that Alco would not insist on its right to terminate the contract if the drillsite was not secured by June 1.

Concord argues that it was injured by *loss of opportunity* to acquire the drillsite by purchase. In support of its argument, Concord cites Schwarz v. National Bank of Texas, 67 Tex. 217, 2 S.W. 865 (1887), Weinstein v. National Bank of Jefferson, 69 Tex. 38, 6 S.W. 171 (1887), and Fifth National Bank of San Antonio v. Iron City National Bank of Llano, 92 Tex. 436, 49 S.W. 368 (1899). These cases will support the proposition that an estoppel will be raised in favor of one who, in reliance upon the misrepresentations or inaction of another, can show that he has been deprived of a reasonable opportunity to save himself from injury. In Weinstein v. National Bank, supra, it was said:

"It has been held by this court that when one party has been prevented or induced by the conduct and representations of another from taking prompt action for the collection of his debt, that this is such a change in his position for the worse as to meet the requirement of the law in order to create an estoppel. Schwarz v. [National] Bank, 67 Tex. 217, 2 S.W.Rep. 865."

Further, the party pleading estoppel need not prove to a certainty that the lost opportunity would have ripened into success

but for the misrepresentations or inaction of another; it is enough to show that the lost opportunity carried a reasonable possibility of success. Indeed, to force one such as Concord to show what offer it could and would have made and what would have been the landowners' response to such offer would all but destroy the estoppel defense.

In the case of the Fifth National Bank of San Antonio v. Iron City National Bank of Llano, supra, San Antonio Bank's lost opportunity to recover its funds from the Llano Bank cashier—a swindler who owned no property—would seem rather remote. Yet this Court there upheld the San Antonio Bank's plea of estoppel against the Llano Bank for the latter's negligent delay in notification. The Court quoted with approval the following language taken from Leather Manufacturer's Nat. Bank v. Morgan, 117 U.S. 96, 6 S.Ct. 657, 29 L.Ed. 811:

> "It is not necessary that it should be made to appear, by evidence, that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal. * * * As the right to seek and compel restoration and payment from the person * * * was in itself a valuable one, it is sufficient if it appears that the bank, by reason of the negligence, * * * was prevented from promptly and, it may be, effectively exercising it."

The majority does not question the soundness of Concord's argument or of its supporting authorities. What the majority holds is that Concord was not injured by its loss of opportunity because the evidence establishes conclusively that the drillsite could not have been purchased by June 1. I cannot agree with the holding.

In the instant case it is true, as respondent contends, that the landowners were vigorously resisting Concord's efforts to condemn the drillsite. They obtained three temporary restraining orders staying the proceedings, and prior to the filing of the condemnation suit, the landowners had refused at least two offers made by Concord to purchase the drillsite. However, as Pawel testified, his first offers were substantially less than the $4,064 condemnation award which was finally set on June 6, 1961 and accepted by the landowners in November, 1961. He further testified that had Concord realized Alco intended to insist on the June 1 deadline, Concord would have been willing to "pay through the nose" for the site. There is nothing in the record to show that the landowners would not have sold to Concord if it had raised the ante. Had Concord offered the landowners a handsome premium for the drillsite, there would have been at least a reasonable possibility that the site could have been procured prior to the deadline, and the evidence does not, in my judgment, establish conclusively that it could not have been purchased by June 1.

I would grant the motion for rehearing and reverse the judgment of the Court of Civil Appeals and would affirm the judgment of the trial court denying Alco a recovery.

STEAKLEY, J., joins in this dissent.