**STANLEY EDUCATIONAL METHODS, INC., Plaintiff-Appellant,**

v.

**The BECKER C.P.A. REVIEW COURSE, INC., Defendant-Appellee.**

No. 75–1155.

United States Court of Appeals, Fifth Circuit.

July 30, 1976.

Rehearing Denied Sept. 22, 1976.
See 539 F.2d 393.

E. Charles Bedsole, G. Brockett Irwin, Dallas, Tex., for plaintiff-appellant.

J. T. Vaughan, Jr., A. E. Aikman, Dallas, Tex., for defendant-appellee.

Before DYER and CLARK, Circuit Judges, and KRAFT *, District Judge.

CLARK, Circuit Judge:

On May 8, 1964, Stanley Educational Methods, Inc. (Stanley), and Becker Educational Methods, Inc., predecessor of the present defendant, The Becker CPA Review Course, Ltd. (Becker), entered into a contract under which Becker would supply materials and teaching aids to Stanley for use by the latter in conducting in the Dallas, Texas area review courses for the Certified Public Accountant examination. Becker was to receive a percentage of Stanley's receipts. The term of the original contract was five years. In 1969, the contract, in substantially its original form, was renewed for a period ending June 1, 1974. In 1971, the parties agreed orally to adopt a similar plan for the New Orleans area. Under the agreements, Stanley taught CPA review courses in January and June each year.

As the expiration date approached, Stanley undertook preparations for a course to begin May 28, 1974; these preparations were undertaken with the knowledge and participation of Becker. At the same time, Becker and Stanley conducted negotiations aimed at producing a new agreement. These negotiations failed to produce such an agreement, however, and on May 20, Becker informed Stanley that the agreement then in force would expire on schedule, June 1.

On May 28—the day the course was scheduled to begin—Stanley filed a petition for declaratory and injunctive relief in the district court, urging that Becker had no right to "cancel" the contract and that it should be enjoined from interfering with the conduct of the courses under principles of equitable estoppel. The following day, the district court signed a "Fiat" in the form reproduced in the margin.[1] The next court order appearing in the docket entries

---

* Senior District Judge, of the Eastern District of Pennsylvania, sitting by designation.

1. JUDGE'S FIAT

The foregoing complaint for a preliminary injunction was presented to me in chambers on this the 28th day of May, 1974, and it appearing to the Court that Plaintiff will suffer irreparable injury, loss and damages unless a preliminary injunction is issued enjoining Defendant from cancelling the contracts between the parties and that a Notice should be issued to the

and record is dated June 27, 1974. The order recites that it *continues* an injunction. This order, as approved by counsel for both parties, also is reproduced in the margin.[2]

A bench trial was held October 16, 1974, at which time the court read into the record findings of fact and conclusions of law; these findings and conclusions subsequently were formalized and entered December 11, 1974, and judgment based thereon was entered one week later.

In sum, the district court found: 1) Becker was not equitably estopped to contend that the 1969 contract renewal had expired June 1, 1974; 2) the contract had so expired; 3) Stanley's use of the Becker material after June 1 was unauthorized and a breach of contract; 4) Becker was entitled to recover damages of $58,955.50 for the breach; and 5) the breach rendered the non-competition clause of the contract unenforceable.

As a preliminary matter, we are confronted with the question of the effect of the trial court's orders of May 29 and June 27, 1974. The original complaint prays for a preliminary injunction and requests a "show cause" order to notify Becker and set the date for an adversary hearing. *See* Fed.R.Civ.P. 65(a)(1) and (2). The district court's Fiat granted this request, ordering defendant Becker to appear before it at 9:00 a. m., June 13, 1974.

No record of any such proceeding—or reason why it was not held—appears in the docket entries, exhibits or briefs of the parties, nor is such an event claimed to exist *dehors* the record. Several explanations for this state of affairs are plausible. Stanley and Becker may have agreed to postpone the proceedings. The trial court may have continued the hearing on its own. Becker may have failed to appear June 13, or misconstrued the Fiat as a temporary restraining order. If any of these possibilities be true, what is *not* explained is the failure of the parties to take proper action to record the actual event. As a result, it is not clear what—if any—injunction was issued.

Not only does Stanley offer no explanation for this omission, it also affirmatively seeks a reversal of the district court's action premised in part upon the lack of injunctive coercion during this period. Clearly, the responsibility for this crucial deficiency rests with the litigant who would urge the missing matter as a basis for his appellate position. Fed.R.App.P. 10(e).

▪ Despite these procedural deficiencies, justice demands that we premise our review on the same basis accepted by the parties and the court: as though some form of injunctive mandate had been in force from May 29 through the entry of the "order continuing injunction" on June 27. Ob-

---

Defendant to appear and show cause why the Court should not issue a preliminary injunction directed to Defendant, that the attempted cancellation of the contracts between Plaintiff and Defendant be enjoined.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Clerk forthwith issue Notice of the Defendant to appear on the 13 day of June 1974 at 9 o'clock A. M. in the Federal Building, 1100 Commerce Street, Dallas, Texas, and show cause why a preliminary injunction should not be issued enjoining the Defendant from attempting to cancel or cancelling the contracts of Defendant with Plaintiff, said preliminary injunction to provide that Plaintiff will furnish bond as set by the Court conditioned that Plaintiff will pay all sums of money and costs that may be adjudged against Plaintiff if on trial of this cause said injunction is dissolved by the Court.

2. ORDER CONTINUING INJUNCTION

On this the 27th day of June, 1974, came on to be heard the above styled and numbered cause on the continuance of Temporary Injunction heretofore granted and both parties herein were represented by their respective attorneys. The attorneys agreed to the following:

It is Ordered and Decreed that the Temporary Injunction heretofore issued on the 28th day of May be continued in effect until final hearing on the merits of this cause or until such other order of this Court, and that the materials hereafter furnished by Defendant to Plaintiff in connection with the C.P.A Review Course now being conducted by Plaintiff shall not in any manner be construed as a waiver of any grounds of defense or counter claim of Defendant.

viously this understanding pervaded the case below [3] during the entirety of the proceedings. Stanley's belated attempt to have us consider that, since no injunction order technically issued, Becker acted voluntarily is at odds with the reality of what happened. If Becker had not obeyed what it thought was its enjoined duty during this period, Stanley obviously would have insisted that its inchoate rights be perfected by a court which thought they already existed. Stanley cannot now derive an advantage from this common mistake or oversight.

Stanley argues that Becker's acts and omissions caused Stanley to undertake obligations it would not have incurred had it known that its contract would be cancelled. Thus Stanley argues Becker is estopped from asserting that Stanley's continued conduct of the course which began on May 28 was a breach of contract.

■ The elements of equitable estoppel as applied in Texas are set out in *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952). They are:

1) false representation or knowing concealment of
2) material
3) facts
made with 4) actual or constructive knowledge thereof
5) to a party lacking such knowledge or the means of obtaining it
with 6) successful
7) intent to induce reliance
8) prejudicial to the party so relying.

*See id.* at 417–418, 252 S.W.2d at 932.

■ The district court found that "[Becker's president] made no false representations, nor did he conceal material facts in regard to the termination of the contract." This finding is not clearly erroneous. No-

where in the record is there any indication that Becker said or did anything to lead Stanley to believe that conduct of the May 28 course, which necessarily occurred almost entirely after June 1, would be regarded as anything but a breach of contract. The fact that it began within the last days of the contract period was immaterial unless it was conducted under terms acceptable to both Becker and Stanley. Becker's comment "I'm sure we can work something out," is more surely an indication of an affirmative attitude toward success in negotiations than a description of a present bargaining condition. In any case, it is devoid of *promissory* content. Thus, on these facts, the first element of equitable estoppel is absent. Moreover, the trial court found as a fact that the conversations between Stanley's president, Jerrell Sims, and Newton Becker of Becker were directed toward negotiation of a new contract, not extension of the old one.

The discussions contained references to changes in the relationship between the parties, and in the percentages of the proceeds to be retained by Stanley and paid over to Becker. While the original 1964 contract provided for extension for an additional five years *at the election of either party,* it also provided that the contract would terminate at the end of the second five-year period unless extended by *mutual consent.* The proof that substantial changes in the nature of the agreement were desired by Becker substantiates the district court's finding that the negotiations pertained to a new agreement that would embody those changes. Since the discussions pertained, not to present facts, but to future intentions, the third element of an equitable estoppel is missing here as well.

On the whole, we find a substantial similarity between the situation of the parties in this case and that present in *Concord Oil Co. v. Alco Oil and Gas Corp.,* 387 S.W.2d 635 (Tex.1965). In *Concord Oil,* a drilling

---

3. The confusion survives in this court, where the briefs of both parties characterize the "Fiat" as an "injunction."

company was held not estopped to require strict compliance with an agreement by the defendant company to obtain a drillsite by a date certain. In support of its decision, the court wrote:

> [The] contract provided for the June 1st cut-off date . . .. Both parties had copies of the contract and operated thereunder. Where there is such a contract neither party has a duty to the other, every time contact is made with the other to say, "You know June 1st is the cut-off date." The parties have so contracted and are bound to such date in the absence of estoppel. The failure on the part of [plaintiff] to point out to [defendant] that June 1st was the cut-off date cannot be any basis for an estoppel.

387 S.W.2d at 640. Two justices dissented, arguing that the facts revealed plaintiff's failure to disclose the result of a meeting of its directors to decide whether an extension of time would be granted, and that that omission was sufficient concealment to render equitable estoppel appropriate. The circumstances here do not even present the considerations in favor of estoppel that were found insufficient in *Concord Oil.* Accordingly, we have no doubt that a Texas court would agree with the district court that Becker was not estopped to assert that Stanley breached the contract by conducting its course after June 1, 1974.

Not being estopped to assert that Stanley's conduct constituted a breach of contract, Becker could and clearly did present evidence tending to show that the breach occurred. The contract specifically provided that, upon termination, Stanley would return Becker's property. This, of course, was not done, since Stanley conducted the May 28th course, using the very materials it was required to return. The trial court correctly found this action to have breached the contract. Accordingly, we need not decide whether, as Becker asserts, other actions of Stanley also constituted breaches of the agreement.

Stanley argues that even if its actions in conducting the May 28th course breached its contract with Becker, the behavior of the latter indicated that it waived the breach. Stanley specifically points to: Becker's acquiescence in the continuation of the May 28th course and its acceptance of payment for materials used; a letter from Becker's Los Angeles counsel to Stanley dated June 4, 1974;[4] and the language of the June 27 Order Continuing Injunction which specified that materials "hereafter furnished" would not be construed to waive any defense. The simple answer to this argument is that to be effective, waiver of a breach of contract by the injured party must be knowing and voluntary. *See El Paso & S. W. R. R. v. Eichel & Weikel,* 130 S.W. 922 (Tex.Civ.App.1910, *writ ref'd*). *See also* 5 Williston on Contracts §§ 678 at 239–40, 679 at 253–55, 681, 688 at 304 (3d ed. 1961). None of the acts Stanley identifies as evidence of waiver may be characterized as voluntary because each took place at a time when, by mutual assent of the parties, the injunctive power of the district court was operating to preserve the status quo ante. Refusal by Becker to cooperate with Stanley as if the old contract were still in effect would have violated the injunction. Further, the use of language in the June 27 order indicating that "materials

4. The letter reads in pertinent part:
. . . [Mr. Becker] has further authorized me to inform you that, although he sincerely hopes that we are able to negotiate a deal for each of the three cities on acceptable terms, failure to reach satisfactory arrangement in the immediate future will force Becker to institute legal proceedings to protect its legal rights. Accordingly, if new contracts are not reached by June 30, 1974, demand is hereby made to cease and desist using all Becker tapes, slides and other materials, effective June 30, 1974, in Dallas, Texas and at the close of the current term in Ft. Worth, Texas and New Orleans, Louisiana . . ..

I would like to point out to you that Mr. Becker does not want to terminate his relationship with Mr. Sims if this is at all possible . . ..

hereafter furnished . . . [to Stanley] should not be construed as a waiver" does not carry with it the implication that furnishing of materials before June 27 should be so construed. Rather, in the context of a continuation of injunctive restraint, it indicates that the meaning and effect of such supply remained at issue, and that the coercive impact of enjoined conduct was without prejudice to the rights of the compelled party.

■ The language of the June 4 letter tends to support Stanley's position. However, it is no more than a simple component of the fact matrix that must be considered in deciding Becker's knowledge and intent. *See* Williston on Contracts, *supra*, § 687 at 292 & n.1. The district court considered the June 4 letter along with the other evidence in finding that Stanley had breached the contract. Although no specific factfinding addresses the question of the letter's effect, the court could not have attributed to it such a significance as would disturb the overall finding of operative breach.[5] The record contains substantial evidence to indicate that Becker intended no more than to comply with the injunction and to attempt satisfactorily to conclude negotiations for a new contract. The decision that the letter alone did not control the character of the dealings between the parties was not clearly erroneous.

■ Stanley contends that even if it breached the contract, Becker's noncompetition clause is still binding for five years following rendition of judgment on appeal. This position is meritless. The noncompetition clause in this agreement is not separable from its provisions. The parties each bargained for promises from the other to conform to all of the terms of the agree-

ment. Therefore, the district court correctly held that Stanley's breach of the agreement nullified any obligation on the part of Becker to keep its promise not to compete.

■ Finally, Stanley argues that the damage awarded to Becker of $58,955.50, less a credit of $35,000 for Stanley's payment, was excessive. While the precise method the district court used to calculate the damage award is not disclosed, the amount is well within the maximum award supportable by the evidence. *Cf. Glazer v. Glazer,* 374 F.2d 390 (5th Cir. 1967).

■ Stanley's representative testified that the gross revenues from the May 28th course amounted to approximately $160,000. Since nearly all of the course was conducted in breach of the contract, the district court's award could properly reflect the value of Becker's materials to Stanley, the value of the class sessions held before the expiration date, and the value to Becker of Stanley's services as teacher and collection agent, just to name a few. Where an examination of the record does not give rise to a definite and firm conviction that a mistake has been committed, the court's award will not be disturbed. *See Baggett v. Richardson,* 473 F.2d 863 (5th Cir. 1973); *Hobart Bros. v. Malcolm T. Gilliland, Inc.,* 471 F.2d 894 (5th Cir.), *cert. denied,* 412 U.S. 923, 93 S.Ct. 2736, 37 L.Ed.2d 150 (1973); Fed.R.Civ.P. 52(a). While demonstration of the method of calculation would have been preferable, its absence in this case does not generate a conviction that a mistake has been committed. We affirm the district court's award of damages.

Having concluded that none of the operative findings of fact entered by the district court were clearly erroneous, and that that

---

5.  The letter could be construed as not proving a contrary intent at all. For example, since the May 27–29 proceedings were ex parte and literally ambiguous, Becker's Los Angeles counsel may not have been aware of their commencement or significance as of June 4. Alternatively, the district court may have viewed the letter as no more than an indication that Becker was

willing to negotiate a new five-year agreement which would settle the controversy by June 30, 1974, without resort to final adjudication. In view of the other substantial evidence of nonwaiver by Becker, it is unnecessary here to guess whether the district court assayed it one way or the other.

court correctly applied the law, its judgment is in all things

AFFIRMED.